UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

DISABILITY RIGHTS NEW YORK,

                    Plaintiff,                          \_\_\_\_\_ Civ. _____ (    )

              -against-

FERNCLIFF MANOR FOR               **COMPLAINT FOR**
THE RETARDED, INC. D/B/A S.A.I.L      **DECLARATORY AND**
AT FERNCLIFF MANOR, and           **INJUNCTIVE RELIEF**
WILLIAM J. SAICH, in his official
capacity as Executive Director of
FERNCLIFF MANOR FOR
THE RETARDED, INC. D/B/A
S.A.I.L. AT FERNCLIFF MANOR,

                   Defendants.

------------------------------------------------------------------------x


# I.   <u>INTRODUCTION</u>

1.    Plaintiff Disability Rights New York (DRNY), the federally designated Protection and Advocacy ("P&A") system in the State of New York, brings this action to enforce its rights under federal law to access records, access parent and guardian contact information, and access Defendants' premises to investigate allegations of abuse and neglect and monitor the Defendants' alleged corrective action pursuant to the Developmental Disabilities Assistance and Bill of Rights Act of 2000 ("DD Act"), 42 U.S.C. § 15041 <u>et seq.</u>; the Protection and Advocacy for Individuals with Mental Illness Act of 1986 ("PAIMI Act"), 42 U.S.C. § 10801 <u>et seq.</u>; and the Protection and Advocacy of Individual Rights Act ("PAIR Act"), 29 U.S.C. § 794e.

2.     Ferncliff Manor for the Retarded, Inc., d/b/a/ S.A.I.L. at Ferncliff Manor ("Ferncliff Manor") is a New York State approved private residential school facility created by Chapter 853 of the Laws of 1976, N.Y. Educ. Law Ch. 16, tit. VI, art. 89.

3.     Ferncliff Manor provides care, treatment, services, and habilitation to people with disabilities.

4.     DRNY has received twenty-one complaints alleging serious abuse or neglect occurring at Ferncliff Manor.

5.     On June 25, 2015, the Defendants refused to provide DRNY with the records requested by DRNY pursuant to DRNY's P&A authority.

6.     On June 25, 2015, the Defendants refused to provide DRNY with the parent and guardian contact information requested by DRNY pursuant to DRNY's P&A authority.

7.     On June 25, 2015, the Defendants refused to permit DRNY access to the Ferncliff Manor location to investigate complaints of abuse and neglect, received by the P&A system, and to monitor Defendants' alleged corrective action, pursuant to DRNY's P&A authority.

8.     On January 8, 2016, following attempts by DRNY to reach a resolution, Ferncliff Manor denied all of DRNY's requests for records, contact information and location access to investigate allegations of abuse and neglect and monitor the Defendants' alleged implementation of corrective action.

9.     On March 18, 2016, the Defendants repeated their denial.

10.     On March 25, 2016, the Defendants confirmed that their position remained unchanged.

11.     Defendants' actions and omissions prevent DRNY from performing its statutory mandate to investigate allegations of abuse and neglect of individuals with disabilities and to monitor the rights of Ferncliff Manor students and residents with disabilities.

12.     DRNY brings this action for declaratory and injunctive relief to obtain access to the Ferncliff Manor location, records, and information.

## II.     JURISDICTION AND VENUE

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331.

14.     Plaintiff's federal claims are made pursuant to the DD Act, 42 U.S.C. § 15041 et seq., the PAIMI Act, 42 U.S.C. § 10801 et seq., and the PAIR Act, 29 U.S.C. § 794e.

15.     Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201, 2202.

16.     Venue in this Court is proper pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to this claim occurred in this judicial district.

## III.     PARTIES

### a. Plaintiff

17.     DISABILITY ADVOCATES, INC., is an independent non-profit corporation organized under the laws of the State of New York.

18.     It does business and has sued under the name DISABILITY RIGHTS NEW YORK.

19.     At all times relevant to this action, DRNY has been and is the statewide Protection and Advocacy agency designated by the Governor of the State of New York to protect and advocate for persons with disabilities.  42 U.S.C. § 15043; N.Y. Exec. Law § 558(b).

20. DRNY receives federal funds pursuant to the DD Act, PAIMI Act, and PAIR Act and is thereby obligated to provide protection and advocacy for persons with developmental disabilities, mental illness, and other disabilities. 42 U.S.C. § 15041 et seq.; 42 U.S.C. §§ 10803-10804; 29 U.S.C. § 794e.

21. DRNY is a part of a nationwide network of disability rights agencies authorized to (1) investigate incidents of abuse and neglect of persons with disabilities; (2) pursue administrative, legal, and other appropriate remedies or approaches upon their behalf; and (3) provide information and referrals relating to programs and services addressing the needs of persons with disabilities. 42 U.S.C. § 15041 et seq.; 42 U.S.C. § 10801 et seq.; 29 U.S.C. § 794e.

22. DRNY has authority under federal law to gain access to service provider locations, individuals, parent and guardian contact information, and records to detect, investigate, and prevent abuse and neglect of individuals with disabilities.

23. DRNY is located at 725 Broadway, Suite 450, Albany, NY 12208; 25 Chapel Street, Suite 1005, Brooklyn, NY 11201; and 44 Exchange Blvd, Suite 110, Rochester, NY 14614.

**b. Defendants**

24. Defendant FERNCLIFF MANOR FOR THE RETARDED, INC. is a domestic non-profit corporation organized under the laws of the State of New York.

25. It does business under the name S.A.I.L. AT FERNCLIFF MANOR.

26. Defendant Ferncliff Manor is located at 1154 Saw Mill River Road, Yonkers, NY 10710.

27.     Defendant Ferncliff Manor operates S.A.I.L. at Ferncliff Manor, a New York State Education Department (NYSED) approved private school under Chapter 853 of the Laws of 1976, providing day and residential programs for students with disabilities. N.Y. Educ. Law Ch. 16, tit. VI, art. 89.

28.      S.A.I.L. at Ferncliff Manor's educational responsibilities are designated in the Regulations of the Commissioner of Education. 8 N.Y.C.R.R. § 200.7(b)-(c).

29.     S.A.I.L. at Ferncliff Manor is located at 16 Villard Avenue, Hastings-on-Hudson, NY 10706.

30.     Defendant Ferncliff Manor is an agency authorized by the New York State Office for People with Developmental Disabilities (OPWDD) to provide residential services to people with disabilities.  14 N.Y.C.R.R. §§ 633, 635, 636.

31.     Defendant William J. Saich is the Executive Director of Ferncliff Manor.  He is sued in his official capacity.

32.     At all times relevant to this action, Mr. Saich exercised general responsibility, supervision, and implementation of the policies and practices of Ferncliff Manor.

33.     All of Defendants' acts and omissions set forth in this Complaint were performed or were not performed under color of state law.

## IV.     FACTS

### a.  Relevant Statutes and Regulation Governing DRNY Investigatory Authority

34.     The DD Act, PAIMI Act, and PAIR Act authorize DRNY to access service provider locations to investigate complaints of abuse or neglect of persons with disabilities.

35.     The DD Act, PAIMI Act and PAIR Act grant DRNY unaccompanied access, following DRNY's receipt of a complaint, to service providers that render care and treatment to

persons with developmental disabilities, mental illness, and other disabilities at all times necessary to conduct an investigation into the complaint of abuse or neglect. 42 U.S.C. § 15043(a)(2)(H); 29 U.S.C. § 794e(f)(2); 45 U.S.C. § 10805(a)(3); 45 C.F.R. § 1386.27(b)(2)(2015); 42 C.F.R. § 51.42(b).

36.     Access includes unaccompanied access to locations administered by both private and public service providers and includes all areas used by individuals with disabilities or areas accessible to them. 42 U.S.C. § 15043(a)(2)(H); 45 C.F.R. § 1386.27(b)(2)(2015).

37.     Access also includes the opportunity to interview individuals and employees. Id.

38.     DRNY is not required to provide advance notice to access a service provider location.  45 C.F.R. § 1386.27(b)(2)(2015).

### b.  Relevant Statutes and Regulations Governing DRNY Records Access

39.     The DD Act, PAIMI Act, and PAIR Act authorize DRNY to access records of persons with disabilities.

40.     As the designated P&A system for the State of New York, DRNY's authority to access records includes, but is not limited to:

a.  All records of an individual with a developmental disability, mental illness, or other disability if such individual, or the legal guardian, conservator, or other legal representative of such individual, has authorized DRNY to access such records. 42 U.S.C. § 15043(a)(2)(I)(i); 42 U.S.C. § 10805(a)(4)(A); 29 U.S.C. § 794e(f)(2).

b.  All records of an individual with a developmental disability, mental illness, or other disability if: (1) the individual cannot authorize access due to his or her mental or physical state; (2) the individual does not have a legal guardian or legal

representative; and (3) DRNY has received a complaint about the individual's treatment or DRNY has determined there is probable cause to believe said individual has been subject to abuse or neglect. 42 U.S.C. § 15043(a)(2)(I)(ii); 42 U.S.C. § 10805(a)(4)(B); 29 U.S.C. § 794e(f)(2).

    c.  All records of an individual with a developmental disability, mental illness, or other disability who has died. 42 U.S.C. § 15043(a)(2)(J)(ii)(II); 42 U.S.C. § 10805(a)(4)(B); 29 U.S.C. § 794e(f)(2).

41.    DRNY's records access authority includes reports prepared or received by staff at any location delivering supports and services to individuals with developmental disabilities, mental illness, or other disabilities. 42 U.S.C. § 15043(c)(1); 42 U.S.C. § 10806(b)(3); 29 U.S.C. § 794e(f)(2).

42.    Under the DD Act and the PAIR Act, DRNY is entitled to records requested within three business days following receipt of a written request from the P&A system. 45 C.F.R. § 1386.25(c)(2)(2015); 29 U.S.C. § 794e(f)(2).

43.    Under the PAIMI Act, DRNY is entitled to prompt access to requested records. 42 C.F.R. § 51.41(a).

### c. Relevant Statutes and Regulations Governing DRNY's Contact Information Access

44.    The DD Act, PAIMI Act, and PAIR Act authorize DRNY to access the names and contact information for the parents or guardians of students at a private residential school when DRNY has received a complaint of abuse or neglect or has probable cause to obtain such records. 42 U.S.C. § 15043(a)(2)(I); 42 U.S.C. § 10805(a)(4); 29 U.S.C. § 794e(f)(2).

45.    The DD Act and the PAIR Act require Ferncliff Manor, as a service provider, to give DRNY the name and contact information for the parent or guardian of all individuals with a

developmental disability or other disabilities for whom DRNY has received a complaint of abuse or neglect or has probable cause to obtain such records. 45 C.F.R. § 1386.25(f); 29 U.S.C. § 794e(f)(2).

46.     The PAIMI Act grants the same authority for individuals with mental illness. <u>See Connecticut Office of Protection & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.</u>, 464 F.3d 229, 243-45 (2d Cir. 2006).

47.     To the extent that there are students or residents at Ferncliff Manor who are over the age of eighteen and who do not have a legal guardian or legal representative but who have capacity to consent or deny access to their records, the DD Act, PAIMI Act, and PAIR Act authorize DRNY to access the names and contact information for these individuals to inquire whether these individuals wish to authorize access to their records.  42 U.S.C. § 15043(a)(2)(H)-(I)(i); 42 U.S.C. § 10805(a)(3)-(4)(A); 29 U.S.C. § 794e(f)(2).

### d.  Relevant Statutes and Regulations Governing DRNY Service Provider Records Access

48.     The DD Act, PAIMI Act, and PAIR Act authorize DRNY to access reports prepared by federal, state or local governmental agencies, including state and federal licensing and certification agencies, investigating abuse, neglect, injury, or death, which are relevant to conducting DRNY's investigation.    42 U.S.C. § 15043(a)(2)(J)(i);  45 C.F.R. § 1386.25(b)(2)(2015); 42 U.S.C. § 10805(a)(4); 45 C.F.R § 51.41(c)(4)-(5); 45 C.F.R § 51.41(d); 29 U.S.C. § 794e(f)(2).

49.     The DD Act, PAIMI Act, and PAIR Act also authorize DRNY to access records relating to the service provider. 42 U.S.C. § 15043(a)(2)(J)(i); 45 C.F.R. § 1386.25(b)(4)(2015). 45 C.F.R § 51.41(d)

50.     Under the DD Act, DRNY is entitled to service provider records regardless of whether they are protected by federal or state law. 42 U.S.C. § 15043(a)(2)(J)(i); 45 C.F.R. § 1386.25(b)(2)(2015).

51.     DRNY's access authority extends to records in any form, including draft, preliminary, and final form. 42 U.S.C. § 15043(a)(2)(J)(i); 45 C.F.R. § 1386.25(b)(2015); 42 U.S.C. § 10805(a)(4); 45 C.F.R § 51.41(c); 29 U.S.C. § 794e(f)(2).

### e.  Ferncliff Manor

52.     S.A.I.L. at Ferncliff Manor, also known as an "853 school," is a NYSED approved school authorized to provide educational and residential programming for students with disabilities who cannot be served in their home school district or through another less restrictive program.

53.     A student can only be placed in an 853 school following the determination by the student's Committee on Special Education (CSE) that the student cannot be served in their home district or another less restrictive setting.  8 N.Y.C.R.R. § 200.6; N.Y. Educ. Law Ch. 16, tit. VI, art. 89.

54.     S.A.I.L. at Ferncliff Manor provides educational programming for residential and day students.

55.     Ferncliff Manor is certified by OPWDD to provide residential services to Ferncliff Manor students. 14 N.Y.C.R.R. §§ 633, 635, 636.

56.     Ferncliff Manor is a "service provider" under the DD Act and PAIR Act because it provides services, supports, and other assistance to persons with disabilities.  42 U.S.C. § 15043(a)(2)(H); 29 U.S.C. § 794e(f)(2).

57.     Ferncliff Manor is a "facility" under the PAIMI Act because it is a private residential setting that provides overnight care and mental health treatment services to individuals with mental illness. 42 C.F.R. § 51.2.

### f.     Complaints of Abuse and Neglect of Ferncliff Manor Students and Residents Received by DRNY

58.     On September 8, 2014, DRNY received a complaint of abuse and neglect at Ferncliff Manor.

59.     Complainant #1 alleged that Ferncliff Manor students and residents were not receiving the behavioral supports and interventions they required and were at risk of elopement, placing both the students, residents, and others at risk of injury.

60.     Complainant #1 alleged systemic educational violations.

61.     Complainant #1 alleged that one student and resident was currently being or had previously been abused, as evidenced by unexplained bruising.

62.     On September 9, 2014, DRNY received a complaint of neglect at Ferncliff Manor from Complainant #2.

63.     Complainant #2 alleged that Ferncliff Manor residents were not receiving the behavioral supports and services they required and were at risk of elopement, placing residents and others at risk of injury.

64.     Complainant #2 further alleged that both students' and residents' classroom and bedroom placements were regularly changed without following required protocol and, on at least one occasion, as a form of punishment.

65.     On November 4, 2014, DRNY received a complaint of neglect at Ferncliff Manor from Complainant #3.

66.     Complainant #3 alleged that Ferncliff Manor students and residents were at risk of injury, or at risk of injuring others, due to deficient behavioral interventions and services.

67.     Complainant #3 further alleged systemic regulatory education violations.

68.     Complainant #3 further alleged that Ferncliff Manor residents did not receive the behavioral supports they required in the residential setting and that residents were at risk of elopement due to deficient safeguards in the residence, placing residents and others at risk of injury.

69.     On November 17, 2014, DRNY received a fourth complaint of neglect at Ferncliff Manor from Complainant #3.

70.     Complainant #3 alleged that neglect at Ferncliff Manor continued unabated and that Ferncliff Manor staff faced retaliation for their perceived cooperation with DRNY's investigation.

71.     On November 17, 2014, DRNY received a fifth complaint of neglect at Ferncliff Manor from Complainant #4.

72.     Complainant #4 alleged that Ferncliff Manor students received deficient behavioral services, which prevented students from accessing the educational environment and placed students at risk of injury or injuring others.

73.      Complainant #4 alleged systemic deficiencies in Ferncliff Manor's quality assurance system, which perpetuated ongoing neglect.

74.     Complainant #4 also alleged deficiencies in the medical services department, which placed students at risk of injury and possible death.

75.     On November 18, 2014, DRNY received a sixth complaint of neglect at Ferncliff Manor from Complainant #3.

76.    Complainant #3 alleged that Ferncliff Manor was systemically tampering with records in an attempt to frustrate DRNY's investigation and cover up deficiencies in students' records.

77.    On November 20, 2014, DRNY received a seventh complaint of neglect at Ferncliff Manor from Complainant #3.

78.    Complainant #3 alleged that as a result of the record tampering, behavioral services staff were unavailable to the educational staff, which resulted in students being placed at serious risk of injury.

79.    On December 2, 2014, DRNY received an eighth complaint of neglect at Ferncliff Manor from Complainant #5.

80.    Complainant #5 alleged that Ferncliff Manor students did not receive the behavioral interventions or supports they required and as a result were at risk of injury.

81.    Complainant #5 further alleged that Ferncliff Manor had tampered with student documents.

82.    Complainant #5 also reported a suspicion that Ferncliff Manor administrators had misspent federal and state educational funds.

83.    On December 11, 2014, DRNY received a ninth complaint of neglect at Ferncliff Manor from Complainant #3.

84.    Complainant #3 alleged that Ferncliff Manor students were not receiving the related services they required.

85.    Complainant #3 also reported that the Ferncliff Manor School Psychologist and Director of Behavioral Services failed to attend required CSE meetings.

86.     Additionally, Complainant #3 alleged that Ferncliff Manor staff was being retaliated against for their perceived cooperation with DRNY's investigation.

87.     On December 12, 2014, DRNY received a tenth complaint of neglect at Ferncliff Manor from records provided by the New York State Justice Center for the Protection of People with Special Needs ("Justice Center").

88.     The records revealed that there had been serious deficiencies in Ferncliff Manor's behavioral services program since 2011.

89.     The records further documented deficiencies which were reportedly corrected, but which DRNY had identified as continuing at Ferncliff Manor.

90.     On February 4, 2015, DRNY received an eleventh complaint of neglect at Ferncliff Manor from Complainant #3.

91.     Complainant #3 alleged that Ferncliff Manor was misusing educational funds, which resulted in deficient services for students that placed them at risk of injury or injuring others.

92.     Complainant #3 also alleged that Ferncliff Manor provided deficient medical care to students, which placed students at risk of injury.

93.     On April 7, 2015, DRNY received a twelfth complaint of neglect at Ferncliff Manor from Complainant #3.

94.     Complainant #3 reported that a Ferncliff Manor staff person had recently been retaliated against for that person's perceived cooperation with DRNY's investigation.

95.     On April 8, 2015, DRNY received a thirteenth complaint of neglect at Ferncliff Manor from Complainant #7.

96.     Complainant #7 alleged that Ferncliff Manor students and residents received deficient behavioral services and supports, which placed them at risk of injury.

97.     Complainant #7 further alleged that students did not receive the related services they required.

98.     Complainant #7 also alleged possible misuse of both educational and student funds.

99.     Lastly, Complainant #7 alleged that Ferncliff Manor students received deficient medical care, which placed them at risk of injury and possible death.

100.    On May 12, 2015, DRNY received a fourteenth complaint of neglect and abuse at Ferncliff Manor from Complainant #8.

101.    Complainant #8 alleged that a student and resident at Ferncliff Manor, B.T., had been or was currently being abused or neglected.

102.    B.T. is an individual with a disability as defined by the DD Act, PAIMI Act, and PAIR Act.  42 U.S.C. § 15002(8); 42 U.S.C. § 10802(4); 34 C.F.R. § 381.5(b).

103.    Complainant #8 alleged that B.T. had been denied necessary medical care.

104.    Complainant #8 further alleged that B.T. was not receiving the appropriate supports and services B.T. required in both the educational and residential settings.

105.    Lastly, Complainant #8 alleged that B.T. had been abused or neglected, which had led to excessive bruising.

106.    On June 24, 2015, DRNY received a fifteenth complaint alleging neglect at Ferncliff Manor from Complainant #3.

107.    Complainant #3 alleged that a student at Ferncliff Manor had been severely neglected by Ferncliff Manor staff, which resulted in the student being hospitalized.

108.     On August 10, 2015, DRNY received a sixteenth complaint from OPWDD in its Statement of Deficiencies issued to Ferncliff Manor on August 6, 2015.

109.     OPWDD found pervasive deficiencies in the Ferncliff Manor's residential behavioral services program, which placed residents at serious risk of injury.

110.     OPWDD found insufficient training of residential program staff.

111.     OPWDD also found deficient knowledge among residential staff about incident management and reporting.

112.     Lastly, OPWDD found multiple cases of residents receiving inadequate medical care.

113.     On August 18, 2015, DRNY received a seventeenth complaint alleging neglect at Ferncliff Manor from Complainant #4.

114.     Complainant #4 alleged that neglect of students at Ferncliff Manor continued unabated and that behavioral services had not improved.

115.     Complainant #4 further alleged that at least six Ferncliff Manor students whom the Complainant knew personally were currently being neglected.

116.     Complainant #4 also reported that staff had recently been pressured to file false statements to cover up a recent incident of neglect.

117.     On August 31, 2015, DRNY received an eighteenth complaint alleging neglect at Ferncliff Manor from Complainant #5.

118.     Complainant #5 alleged that a Ferncliff Manor staff member had been retaliated against, in part because of their perceived reporting to DRNY and other investigatory agencies.

119.     Complainant #5 further alleged that neglect continued unabated at Ferncliff Manor.

120.     Complainant #5 also reported that one student had recently been seriously injured from severe bed sores that developed as a result of neglect by Ferncliff Manor staff.

121.     On September 11, 2015, DRNY received the nineteenth complaint alleging ongoing neglect of students at Ferncliff Manor from Complainant #4.

122.     Complainant #4 also alleged the excessive use of restraints on students and residents due to deficient behavioral services.

123.     On November 2, 2015 based on the complaints received by DRNY and information collected over the course of DRNY's investigation, DRNY determined it had probable cause to believe that individuals with disabilities have been and may be subject to abuse and neglect at Ferncliff Manor.

124.     On December 21, 2015, DRNY received the twentieth complaint from NYSED in its Special Education Quality Assurance Monitoring Review issued by NYSED to Ferncliff Manor on November 4, 2015.

125.     NYSED found numerous violations of the New York Codes, Rules and Regulations, including deficient behavioral and related services. 8 N.Y.C.R.R. § 200 et seq.

126.     According to NYSED, its Review was prompted by the findings contained in DRNY's preliminary report on Ferncliff Manor.

127.     On February 8, 2016, DRNY received the twenty-first complaint from OPWDD in its Statement of Deficiencies issued to Ferncliff Manor on November 12, 2015.

128.     OPWDD again found serious deficiencies in the residential setting relating to medication administration, which placed residents at risk of injury and possible death.

129.     OPWDD also found again serious deficiencies in the residential setting relating to behavior management, which placed residents at risk of injury.

130. OPWDD issued Ferncliff Manor a forty-five day warning that continued certification was contingent on Ferncliff Manor's correction of the deficiencies.

131. On January 5, 2016, OPWDD approved Ferncliff Manor's revised plan of correction, after the first draft submitted by Ferncliff Manor was found to be inadequate to address the deficiencies identified.

### g. Systemic Educational Neglect

132. DRNY received twenty-one complaints from ten complainants between September 2014 and February 2016 alleging serious neglect occurring in both Ferncliff Manor's educational and residential programming locations.

133. These complaints affected the rights and safety of all of the Ferncliff Manor students and residents.

134. These twenty-one complaints demonstrate the Defendants' failure to provide students with disabilities with necessary educational and residential programs and services, which are required by law.

135. Such a school-wide failure is a result of bad faith and gross misjudgment by the Defendants, resulting in the provision of deficient legally required educational services to Ferncliff Manor students.

136. DRNY's preliminary investigation of Ferncliff Manor found a school-wide failure to provide students and residents with disabilities with necessary educational and residential programs and services, as required by law.

137. The Defendants have been deliberately indifferent, acted in bad faith, and grossly mismanaged Ferncliff Manor's educational and residential program by failing to intercede, train,

supervise, and ensure that Ferncliff Manor students and residents receive the programs and services that are required by law.

138.    The Defendants have engaged in a pattern of unconstitutional and unlawful conduct that deprived Ferncliff Manor students with disabilities of their right to a free appropriate public education, as required by Federal law and State law.  N.Y. Const. art. XI, § 1; 28 C.F.R. § 104.33; 34 C.F.R. § 104.33; 20 U.S.C. § 1412(a)(1)(A).

## h.  The Defendants acted under Color of State Law

139.     The Defendants are obligated to perform the public function of providing a free appropriate public education, and receive public funds to do so.

140.    Ferncliff Manor receives federal, state and local government funding from school districts to implement students' education programs.

141.    Mr. Saich, as the Ferncliff Manor Executive Director, is obligated to ensure that Ferncliff Manor performs the public function of providing a free appropriate public education.

142.    Ferncliff Manor has failed to fulfill the State of New York's Constitutional obligation and public function to "provide for the maintenance and support of a system of free common schools, wherein all the children of this state may be educated." N.Y. Const. art. XI, § 1.

143.    Therefore, the Defendants have acted under color of state law.

## i.  DRNY'S Preliminary Investigation of Ferncliff Manor

144.    In September 2014 DRNY began an investigation into complaints of neglect at Ferncliff Manor reported to DRNY.

145.     As part of this investigation DRNY sought and was granted access from Ferncliff Manor to both the educational and residential locations; the Ferncliff Manor students, residents and staff; and to redacted student records.

146.     DRNY found ongoing systemic neglect at Ferncliff Manor.  DRNY published these preliminary findings on June 23, 2015 in a public report, entitled "Preliminary Report: Neglect at Ferncliff Manor."

147.     On June 16, 2015, DRNY requested records, contact information, and physical access to the Ferncliff Manor location to complete the investigation, investigate additional complaints of abuse and neglect, and conduct monitoring activities.

148.     Between June 16, 2015 and the commencement of this civil action, DRNY requested the following, with supporting legal authority: Ferncliff Manor certification or licensing reports; Ferncliff Manor policies and data; educational and investigation records; contact information for students and residents with a legal representative; and physical access to the Ferncliff Manor location for both investigation and monitoring purposes.

149.     On May 27, 2015, the parent of B.T. signed an authorization permitting the release of B.T.'s records to DRNY.

150.     On July 31, 2015, DRNY requested B.T.'s records from the Justice Center.

151.     DRNY received the Justice Center investigative records relating to B.T. on August 7, 2015.

152.     Based on the Justice Center records and the complaints received, DRNY determined that B.T. remained at risk of ongoing neglect.

153.     Beginning on November 19, 2015, DRNY requested from Ferncliff Manor all investigative records relating to B.T.

154. Beginning on December 22, 2015, DRNY requested from Ferncliff Manor physical access to the Ferncliff Manor location to meet with B.T. in person.

155. From June 25, 2015 to present, the Defendants have denied all of DRNY's access requests.

156. The Defendants' refusals are in retaliation for DRNY's preliminary report findings, which found ongoing systemic neglect at Ferncliff Manor.

### j. DRNY is Suffering Immediate and Irreparable Injury, Loss or Damage

157. DRNY has statutory authority under the DD Act, the PAIMI Act and the PAIR Act to investigate allegations of abuse or neglect.

158. DRNY has suffered irreparable injury because it cannot exercise its federal statutory authority to access the records, contact information, and location as requested. 42 U.S.C. § 15043(a)(2)(B); 42 U.S.C. § 10805(a)(1)(A); 29 U.S.C. § 794e(f)(2); 45 C.F.R. § 1386.27(c); 42 C.F.R. § 51.42(c).

159. DRNY's preliminary investigation found that Ferncliff Manor tampered with educational records.

160. DRNY suffers immediate and irreparable injury to its ability to investigate the complaints received alleging neglect and abuse if Ferncliff Manor records are further tampered with to hide past or current abuse or neglect.

161. DRNY has statutory authority to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of individuals with disabilities.

162. By preventing DRNY from contacting Ferncliff Manor students and residents and their parents, guardians, or representatives to inform them of DRNY's findings and services, DRNY suffers irreparable injury in the form of immediate risk of ongoing neglect.

163.     Students and residents at Ferncliff Manor are at ongoing risk of injury as a result of this neglect, which requires immediate investigation and advocacy from DRNY.

## V.     <u>PLAINTIFF'S CLAIMS</u>

**Plaintiff's First Claim: Violation of the Protection and Advocacy for Individuals with Developmental Disabilities Act, its Implementing Regulations, and 42 U.S.C. § 1983**

164.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

165.     Defendants' refusal to provide the records requested violates the DD Act and its implementing regulations. 42 U.S.C. §§ 15043(a)(2)(B), (a)(2)(I), (a)(2)(J)(i), (c)(1); 45 C.F.R. §§ 1386.25(a)(2), (b), (f)(2015).

166.     Defendants' refusal to provide the contact information requested violates the DD Act and its implementing regulations. 42 U.S.C. § 15043(a)(2)(I); 45 C.F.R. § 1386.25(a)(f)(2015).

167.     Defendants' refusal to provide access to the Ferncliff Manor locations violates the DD Act and its implementing regulations.  42 U.S.C. §§ 15043(a)(2)(B), (H); 45 C.F.R. § 1386.27(b)-(c)(2015).

168.     Defendants' violation of the DD Act and its implementing regulations interferes with DRNY's federal law mandate to protect people with disabilities in New York State, investigate allegations of abuse and neglect, provide legal advocacy to people with disabilities, and monitor compliance of the rights and safety of service recipients.

169.     Defendants have deprived and continue depriving DRNY of its federal law rights to access records, contact information, and the service provider locations.

170.     Plaintiff has no adequate remedy at law and will suffer irreparable harm absent this Court granting injunctive relief.

**Plaintiff's Second Claim: Violation of the Protection and Advocacy for Individuals with Mental Illness Act, its Implementing Regulations, and 42 U.S.C. § 1983**

171.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

172.     Defendants' refusal to provide the records requested violates the PAIMI Act and its implementing regulations. 42 U.S.C. § 10805(a)(3)-(4); 42 U.S.C. § 10806(b)(3); 45 C.F.R § 51.41(c)-(d); 45 C.F.R § 51.41(c).

173.     Defendants' refusal to provide the contact information requested violates the PAIMI Act and its implementing regulations. 42 U.S.C. § 10805(a)(3)-(4)(A). See Connecticut Office of Protection & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ., 464 F.3d 229, 242-44 (2d Cir. 2006); 45 C.F.R. § 1386.25(f)(2015).

174.     Defendants' refusal to provide access to the Ferncliff Manor facilities violates the PAIMI Act and its implementing regulations. 42 U.S.C. § 10805(a)(1)(A); 42 C.F.R. § 51.42(b)-(c).

175.     Defendants' violation of the PAIMI Act and its implementing regulations interferes with DRNY's federal law mandate to protect people with disabilities in New York State, investigate allegations of abuse and neglect, provide legal advocacy to people with disabilities, and monitor compliance of the rights and safety of facility residents.

176.     Defendants have deprived and continue depriving DRNY of its federal law rights to access records, contact information, and the facilities.

177.     Plaintiff has no adequate remedy at law and will suffer irreparable harm absent this Court granting injunctive relief.

**Plaintiff's Third Claim: Violation of the Protection and Advocacy of Individual Rights Act and 42 U.S.C. § 1983**

178.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

179.     Defendants' refusal to provide the records requested violates the PAIR Act. 29 U.S.C. § 794e(f)(2).  <u>See</u> 42 U.S.C. §§ 15043(a)(2)(B), (a)(2)(I), (a)(2)(J)(i), (c)(1); 45 C.F.R. §§ 1386.25(a)(2), (b), (f)(2015).

180.     Defendants' refusal to provide the contact information requested violates the PAIR Act. 29 U.S.C. § 794e(f)(2).  <u>See</u> 42 U.S.C. § 15043(a)(2)(I); 45 C.F.R. § 1386.25(a)(f)(2015).

181.     Defendants' refusal to provide access to the Ferncliff Manor locations violates the PAIR Act.  29 U.S.C. § 794e(f)(2).  <u>See</u> 42 U.S.C. § 15043(a)(2)(B), (H); 45 C.F.R. § 1386.27(b)-(c)(2015).

182.     Defendants' violation of the PAIR Act interferes with DRNY's federal law mandate to protect people with disabilities in New York State, investigate allegations of abuse and neglect, provide legal advocacy to people with disabilities, and monitor compliance of the rights and safety of  service recipients.

183.     Defendants have deprived and continue depriving DRNY of its federal law rights to access records, contact information and service provider locations.

184.     Plaintiff has no adequate remedy at law and will suffer irreparable harm absent this Court granting injunctive relief.

**Plaintiff's Fourth Claim for Relief: Retaliation Prohibited by the Americans with Disabilities Act**

185.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

186.     Ferncliff Manor students and residents are individuals with disabilities that substantially limit one or more major life activity.

187.     Ferncliff Manor students and residents are qualified individuals with disabilities within the meaning of 42 U.S.C. § 12131(2).

188.     Ferncliff Manor students and residents are entitled to a free appropriate public education.

189.     Failure to provide a free appropriate public education violates the Americans with Disabilities Act (ADA) because it deprives students and residents with disabilities of their right to public education. 42 U.S.C. § 12101 et seq.; 28 C.F.R. § 35.103. See 34 C.F.R. § 104.33.

190.     DRNY was engaging in an activity protected by the ADA when it sought to enforce the rights of Ferncliff Manor students with disabilities to a free appropriate public education.  42 U.S.C. § 12132.

191.     Defendants knew that DRNY was seeking to enforce the rights of Ferncliff Manor students and residents with disabilities to a free appropriate public education.

192.     Defendants knew that DRNY published a preliminary report in an effort to enforce the rights of Ferncliff Manor students and residents with disabilities to a free appropriate public education.

193.     Because DRNY published a preliminary report in an effort to enforce the rights of Ferncliff Manor students and residents with disabilities to a free appropriate public education, the Defendants retaliated against DRNY by refusing to permit DRNY to investigate allegations of

abuse and neglect, refusing to provide DRNY with records and contact information, and refusing to permit DRNY on its premises to investigate or monitor.

194.     Defendants have violated 42 U.S.C. § 12203(a), which bans such retaliation.

**Plaintiff's Fifth Claim for Relief: Retaliation Prohibited by Section 504 of the Rehabilitation Act.**

195.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

196.     Defendants receive federal financial assistance to operate Ferncliff Manor.

197.     Defendants receive federal financial assistance from OPWDD.

198.     Defendants receive federal financial assistance from NYSED.

199.     Defendants receive financial assistance directly or passed through the student's school district of residence or both.

200.     NYSED regulates Defendants' programs.

201.     OPWDD regulates Defendants' programs.

202.     Failure to provide a free appropriate public education violates Section 504 of the Rehabilitation Act, because it deprives students and residents with disabilities of their right to a public education. 29 U.S.C. § 794; 34 C.F.R. § 104.33.

203.     DRNY was engaging in an activity protected by Section 504 of the Rehabilitation Act when it sought to enforce the rights of Ferncliff Manor students and residents with disabilities to a free appropriate public education.  29 U.S.C. § 794.

204.     Defendants knew that DRNY was seeking to enforce the rights of Ferncliff Manor students and residents with disabilities to a free appropriate public education.

205. Defendants knew that DRNY published a preliminary report in an effort to enforce the rights of Ferncliff Manor students and residents with disabilities to a free appropriate public education.

206. Because DRNY published a preliminary report in an effort to enforce the rights of Ferncliff Manor students and residents with disabilities to a free appropriate public education, the Defendants retaliated against DRNY by refusing to permit DRNY to investigate allegations of abuse and neglect, refusing to provide DRNY with records and contact information, and refusing to permit DRNY on its premises to investigate or monitor.

207. Defendants have violated 29 U.S.C. § 794, which bans such retaliation. <u>See</u> 34 C.F.R. §§ 100.7(e); 104.61; 104.33.

## VI.     <u>REQUESTS FOR RELIEF</u>

WHEREFORE, Plaintiff respectfully requests the following relief:

1. A declaratory judgment that the Defendants have violated Plaintiff's rights under the DD Act, PAIMI Act, and PAIR Act by:

    a. Denying DRNY access to client records for which release of records is authorized by the individual's legal guardian or legal representative;

    b. Denying DRNY access to client records for which release of records is authorized by the individual;

    c. Denying DRNY access to client records for which DRNY has federal authority to access;

    d. Denying DRNY access to contact information for which DRNY has federal authority to access;

e. Denying DRNY access to the Ferncliff Manor locations;

f. Interfering with DRNY's authority to monitor Ferncliff Manor; and

g. Interfering with DRNY's duty to investigate allegations of abuse and neglect of persons with disabilities.

2. A declaratory judgment that the Defendants have retaliated against DRNY for its activities to enforce the rights of students with disabilities under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act.

3. A preliminary and thereafter permanent injunction ordering the Defendants to provide Plaintiff with copies of all records requested pursuant to its federally mandated P&A authority;

4. A preliminary and thereafter permanent injunction ordering the Defendants to provide Plaintiff with the contact information requested pursuant to its federally mandated P&A authority;

5. A preliminary and thereafter permanent injunction ordering the Defendants to provide Plaintiff with access to its locations pursuant to its federally mandated P&A authority;

6. A preliminary and thereafter permanent injunction ordering the Defendants to cease retaliating against DRNY for DRNY's activities to enforce the rights of Ferncliff Manor students and residents with disabilities under the ADA and Section 504 of the Rehabilitation Act;

7. Retain jurisdiction over this action to ensure the Defendants' compliance with the mandates of the DD Act, the PAIMI Act, and the PAIR Act;

8. An award of attorney's fees and costs pursuant to 42 U.S.C. § 1988;

9.  An award of attorney's fees pursuant to 42 U.S.C. § 12205;

10. An award of attorney fees pursuant to 29 U.S.C. § 794a(b); and

11. Any other relief that the Court deems appropriate.

DATED:        May 6, 2016

              Brooklyn, New York

Respectfully submitted,

*Jennifer Monthie*

DISABILITY RIGHTS NEW YORK
Attorneys for Plaintiff

        ANASTASIA HOLOBOFF
        Bar Roll No. AH8069

        JONATHAN GARVIN
        Bar Roll No. JG6299

        JENNIFER MONTHIE
        Bar Roll No. JM4077

        CLIFF ZUCKER
        Bar Roll No. CZ2254

725 Broadway Suite 450
Albany, New York 12207
(518) 432-7861 (telephone)
(518) 427-6561 (fax) (not for service)