# Exhibit 19

# DISABILITY RIGHTS NEW YORK

25 CHAPEL STREET, SUITE 1005
BROOKLYN, NEW YORK 11201
(518) 432-7861 (VOICE)
(518) 512-3448 (TTY)
(800) 993-8982 (TOLL FREE)
(718) 797-1161 (FAX)
MAIL@DISABILITYRIGHTSNY.ORG
WWW.DISABILITYRIGHTSNY.ORG

October 6, 2014

William Saich, Executive Director
S.A.I.L. at Ferncliff Manor
1154 Saw Mill River Road
Yonkers, NY 10710

Dear Mr. Saich:

Disability Rights New York (DRNY) is the designated federal Protection and Advocacy System ("P & A") for individuals with disabilities in New York State, as set forth in Executive Law §558(b). DRNY has received multiple complaints that students and residents with disabilities who currently or formerly participated in programming at S.A.I.L. at Ferncliff Manor ("Ferncliff Manor") have been, and/or continue to be, subject to abuse and neglect as defined in 45 C.F.R. § 1386.19 and 42 C.F.R. § 51.2, as a result of the physical layout of the facility and particular patterns of conduct carried out by administrators and staff. DRNY has authority under federal and state law to thoroughly investigate one or more allegations of abuse or neglect occurring in any public or private entity that provides care, services, treatment and/or habilitation to person with disabilities, including residential schools approved by the New York State Education Department under Chapter 853 of the Laws of 1976. *See infra.*

As part of our effort to conduct a full investigation of the complaints we have received, one or more attorneys from DRNY will investigate Ferncliff Manor on October 27, 2014 and October 29, 2014 between the hours of 8:00 AM and 10:00 PM.

In order to efficiently conduct our investigation on behalf of people with disabilities who reside at Ferncliff, our goal is to resolve any questions regarding DRNY's protection and advocacy access authority in advance of our visits. To that end, the rest of this letter specifies DRNY's authority and the scope of DRNY's investigation. We are available to discuss any questions or issues you have. Please inform us in writing by close of business on Monday, October 6, 2014 of any objections to DRNY's plan, with a statement of reasons for any denial of access. 42 C.F.R. § 51.43; 45 C.F.R. § 1386.22(i).

## I. Legal Authority for DRNY Access

DRNY has the right to access facilities under the Protection and Advocacy for Mentally Ill Individuals Amendments Act ("PAIMI Act"), 42 U.S.C. § 10801 *et. seq.*, the Developmental Disabilities Assistance and Bill of Rights Act ("DD Act"), 42 U.S.C. § 15041 *et. seq*, and the Rehabilitation Act Amendments of 1992, 29 U.S.C. § 794e ("PAIR Act"). The core functions of

PROVIDING PROTECTION & ADVOCACY AND CLIENT ASSISTANCE PROGRAM SERVICES TO PERSONS WITH DISABILITIES.

SAICH, WILLIAM
OCTOBER 6, 2014
PAGE 2 OF 5

a P & A are to monitor conditions, protect the rights of people with disabilities, investigate allegations of abuse and neglect, and educate and provide referral services. *Disability Rights Washington v. Penrith Farms*, No. CV-09-024-JLQ, 2009 WL 3245110, at *1 (E.D. Wash. Oct. 6, 2009) (unreported); *Equip for Equality, Inc. v. Ingalls Mem'l Hosp.*, 329 F. Supp. 2d 982, 984 (N.D. Ill. 2004).

    a.  *Reasonable Access*

As the Second Circuit and other federal courts have held, and as provided in 42 U.S.C. § 15043(a)(2)(H), 42 U.S.C. § 10805(a)(3) and 29 U.S.C. § 794e(f), a P & A is entitled to general, "reasonable access" to facilities to monitor and address the protection and safety of individuals with mental, physical, and sensory disabilities. *See Connecticut Office of Protection & Advocacy for Persons with Disabilities v. Hartford Bd. of Educ.*, 464 F.3d 229, 242 (2d Cir. 2006) (holding that DD and PAIR Acts establish general access authority both for investigatory and monitoring purposes); *see Mississippi Protection & Advocacy Sys. v. Cotten*, 929 F.2d 1054 (5th Cir. 1991) (concluding that restrictions on access to residents violated the DD Act and affirming permanent injunction permitting access to facility); *see Disability Rights New York v. North Colonie Bd. of Ed.*, (N.D.N.Y. June 20, 2014) (No. 1:14-CV-744) (issuing an order restraining defendant from denying DRNY immediate access to defendant school to investigate allegations of abuse and neglect); *see J.H. v. Hinds Cnty., Mississippi*, No. 3:11-cv-327-DPJ-FKB, 2011 WL 3047667, at *3 (S.D. Miss. July 25, 2011) (unreported) (granting preliminary injunction against juvenile detention facility, finding monitoring authority includes reasonable access to all residents, including persons with and without disabilities); *see Equip for Equality, Inc. v. Ingalls Mem'l Hosp.*, 292 F. Supp. 2d 1086, 1096, 1099 (N.D. Ill. 2003) (holding that P & A was entitled to "reasonable access" under PAIMI to patients with serious mental illness in locked down inpatient unit); *see Pennsylvania Protection & Advocacy, Inc. v. Royer-Greaves School for Blind*, No. CIV. A. 98-3995, 1999 WL 179797, at *4 (E.D. Pa. 1999) (unreported) (holding a P & A seeking to conduct monitoring visits is entitled to access all residents and access may not be limited to residents who received past advocacy services); *see Michigan Protection & Advocacy Serv., Inc. v. Miller*, 849 F. Supp. 1202, 1209-10 (W.D. Mich. 1994) (granting motion for summary judgment, holding that limitations on P & A access to individuals with disabilities at training schools, regional detention facilities, and foster care homes were invalid under the PADD and PAIMI Acts).

DRNY requires reasonable access to Ferncliff for the purpose of investigation and monitoring. As explained in further detail below, for these purposes, the federal courts have affirmed the authority of a P & A to conduct informal conversations and private interviews, educate individuals about their rights and the protection and advocacy services available (including by distributing education materials with the P & A's contact information), and inspect and document conditions impacting the rights of individuals with disabilities.

    b.  *Investigation*

DRNY has authority to investigate incidents of abuse and neglect of individuals with developmental disabilities and/or mental illness if the incidents are reported to the system or there is probable cause to believe that the incidents occurred. *See* 42 U.S.C. § 15043(a)(2)(B);

SAICH, WILLIAM
OCTOBER 6, 2014
PAGE 3 OF 5

45 C.F.R. § 1386.22(f); 42 U.S.C. § 10805(a)(1)(A); 42 C.F.R. § 51.42(b). DRNY's probable cause determination is final, and does not require review by a state agency or court of law. *See Protection & Advocacy for Persons with Developmental Disabilities v. Armstrong*, 266 F. Supp. 2d 303, 322 (D. Conn. 2003) (holding that a P & A need not rely on any other agency to make its probable cause determination); *Center for Legal Advocacy v. Earnest*, 188 F. Supp. 2d 1251, (D. Colo. 2002), *rev'd on other grounds*, 320 F.3d 1107 (10th Cir. 2003) (holding that a P & A's probable cause determination may not be re-evaluated by the state or service provider due to the state or service provider's disagreement); *Iowa Protection & Advocacy Services, Inc. v. Rasmussen*, 206 F.R.D. 630, 638 (S.D. Iowa 2001) (stating that "the statute is clear that it is the protection and advocacy system that shall make the relevant probable cause determination. . . ."). Contact as minor as an anonymous tip will provide the requisite probable cause for the purposes of conducting a P & A investigation. *Alabama Disabilities Advocacy Program v. J.S. Tarwater Developmental Center*, 97 F.3d 492, 498 (11th Cir. 1996), *aff'g* 894 F. Supp. 424, 429 (M.D. Alabama 1995) (holding that an anonymous phone call provides enough evidence to support allegations of abuse and neglect and thereby establishes probable cause justifying an investigation). Since DRNY has the requisite probable cause to believe abuse and neglect has occurred, is occurring, and will continue to occur, DRNY will initiate an investigation of Ferncliff.

   c. *Education*

DRNY has authority to educate individuals with disabilities about their rights and about P & A services available as well as other appropriate referrals. *See* 42 U.S.C. § 15043(a)(2)(A)(ii) (stating that the P & A system shall have authority to "provide information on and referral to programs and services addressing the needs of individuals with developmental disabilities"); *see* 29 U.S.C. § 794e(f) (stating that the P & A system shall have same general authority as provided under the PADD Act and the ability to "provide information on and make referrals to programs and services addressing the needs of individuals with disabilities"); *see Robbins v. Budke*, 739 F. Supp. at 1487, 1489 (stating that a P & A must be "permitted to present regular informal patients' rights education to all patients . . . who are mentally ill or developmentally disabled" and ordering "regular, frequent access" for this purpose). The provision of this information is a critical "purpose" of access authority. 42 C.F.R. § 51.42(c); 45 C.F.R. § 1386.22(g). Thus, in the course of its investigation of Ferncliff, DRNY intends to educate individuals regarding their rights, services available from DRNY, and other appropriate referrals.

   d. *Inspection and Photography*

Finally, DRNY has the right to inspect, view, and photograph all facility areas used by or accessible to individuals with disabilities. *Equip for Equality*, 292 F. Supp. 2d at 1101; 42 C.F.R. § 51.42(c)(3); 45 C.F.R. § 1386.22(f). The right to photograph facility areas is not limited by facility type and applies to a P & A's monitoring and investigation activities in jails and prisons. *See, e.g., J.H. v. Hinds Cnty., Mississippi*, No. 3:11-CV-327 DPJ-FKB (S.D. Miss. Mar. 28, 2012) (consent decree) (unreported), available at http://www.clearinghouse.net/chDocs/public/JI-MS-0008-0006.pdf (affirming P & A's access rights at juvenile detention facility); *J.H. v. Hinds Cnty., Mississippi*, No. 3:11-CV-327 DPJ-FKB (S.D. Miss. Sept. 12, 2011) (preliminary injunction order) (unreported), available at

http://www.clearinghouse.net/chDocs/public/JI-MS-0008-0005.pdf (ordering detention facility to allow "reasonable unaccompanied access to view and photograph all areas of the detention center that are used by residents or that might be accessible to them"). Accordingly, DRNY intends to inspect (including by taking measurements) facility areas that are used by or are accessible to individuals with disabilities. In addition, DRNY may take photographs for monitoring and investigation purposes.

Please note that nothing in the P & A statutes or regulations authorizing DRNY access requires DRNY to provide a copy of photographs to Ferncliff or limits how DRNY uses any photographs in carrying out its responsibilities. See 42 C.F.R. § 51.45(b) (stating that P & A's confidentiality obligations do not prevent the P & A system from "[i]issuing a public report" or "[r]eporting the results of an investigation . . . to responsible investigative or enforcement agencies"). DRNY's right to use information may not be burdened. *See Disability Rights North Carolina v. Moses H. Cone Mem'l Hosp. Operating Corp.*, No. 1:11CV812, 2013 WL 4854316, at *4 (M.D.N.C. Sept. 11, 2013) (slip opinion) (denying request for protective order for peer review records, reasoning "to the extent the proposed protective order would impose restrictions on the use of disclosed materials other than those imposed by federal law, it is overbroad and would unnecessarily burden Plaintiff's function as North Carolina's protection and advocacy system").

## II. Scope of DRNY Investigation

Pursuant to the laws and regulations detailing our access authority, we will require the following:

1. Unaccompanied access to the residential building, each classroom, and all other areas of the facility that we reasonably believe to be connected with the allegations in the complaints we have received.

2. Unaccompanied opportunity to interview employees who we reasonably believe to have knowledge of the incidents under investigation. Employees we may seek to interview include teachers at Ferncliff Manor; classroom teaching assistants and aides working at Ferncliff Manor; Ferncliff Manor's Director of Behavioral Services; Ferncliff Manor's Director of Student Life and Recreation; Ferncliff Manor's Director of Nursing; and Ferncliff Manor's Director of Education.

DRNY also intends to inspect, view, and photograph areas that are used by or are accessible to individuals with disabilities. DRNY will work cooperatively with Ferncliff regarding logistics, such as finding an appropriate time to speak with staff and students so as not to interrupt the education of students in this facility. Additionally, DRNY agrees not to photograph any person absent express consent of the individual involved. The attorneys conducting this visit will bring notebooks, legal pads, pens, measuring equipment (*e.g.* a tape measure and level) cameras, and educational materials.

Please note that DRNY reserves the right to make additional requests at any time for access to the school, staff, students, records, and any other source of information necessary to complete our investigation.

SAICH, WILLIAM
OCTOBER 6, 2014
PAGE 5 OF 5

DRNY is available to discuss in advance any practical concerns that Ferncliff has related to DRNY's planned visits, including logistical considerations to minimize interference with program activity. Practical concerns related to safety or to disruption of on-going program activities do not, however, diminish a P & A's general access authority. *Miller*, 849 F. Supp. at 1208-09. Unless, as applicable regulations require, you provide written objections and reasons for a denial of access, DRNY will assume that Ferncliff has no concerns or questions regarding DRNY's authority and planned visits.

DRNY is committed to working with Ferncliff in a collaborative and productive fashion. Please contact me should you have any questions and concerns, and/or to discuss any specific arrangements for this visit. I can be reached at (518) 432-7861.

Sincerely,

Stefen R. Short, Esq.
Staff Attorney

cc:     Jennifer J. Monthie, Esq.
        PADD Director

        Shain Neumeier, Esq.
        Staff Attorney (Pending NY Admission)

        Anastasia Holoboff
        Law Graduate

PROVIDING PROTECTION & ADVOCACY AND CLIENT ASSISTANCE PROGRAM SERVICES TO PERSONS WITH DISABILITIES.