UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

DISABILITY RIGHTS NEW YORK,

                    Plaintiff,                          **Case No. 7:16-cv-003396-KMK**

          -against-

FERNCLIFF MANOR FOR
THE RETARDED, INC. D/B/A S.A.I.L.
AT FERNCLIFF MANOR, and
WILLIAM J. SAICH, in his official
capacity as Executive Director of
FERNCLIFF MANOR FOR
THE RETARDED, INC. D/B/A
S.A.I.L. AT FERNCLIFF MANOR

                    Defendants.

-------------------------------------------------------------------x


## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR PRELIMINARY INJUNCTION

JONATHAN GARVIN (JG6299)               JENNIFER MONTHIE (JM4077)
ANASTASIA L. HOLOBOFF (AH8069)         CLIFF ZUCKER (CZ2254)
DISABILITY RIGHTS NEW YORK             DISABILITY RIGHTS NEW YORK
25 Chapel Street, Suite 1005           725 Broadway, Suite 450
Brooklyn, New York 11201               Albany, New York 12207
(518) 432-7861                         (518) 432-7861
(718) 797-1161 (fax)(not for service)  (518) 427-6561 (fax)(not for service)


*Attorneys for Plaintiff*

# TABLE OF CONTENTS

INTRODUCTION..................................................................................................................1

FACTS ..............................................................................................................................1

    DRNY has Received Twenty-One Complaints of Abuse and Neglect
    Of Students with Disabilities at Ferncliff Manor....................................................1

    Ferncliff Manor has Refused to Permit Further Investigation ...............................3

ARGUMENT ....................................................................................................................3

    **POINT I**

    **DRNY IS NEW YORK'S DESIGNATED PROTECTION AND ADVOCACY
    SYSTEM AND IS ENTITLED TO ACCESS TO FERNCLIFF MANOR** ........................4

    DRNY is New York State's Protection and Advocacy System...........................4

    Ferncliff Manor is a Service Provider, Facility and Location under the DD Act,
    PAIMI Act, and PAIR Act...................................................................................6

    DRNY, as the P&A, is Entitled to the Records Requested..................................8

    DRNY, as the P&A, is Entitled to the Contact Information Requested ...........10

    DRNY, as the P&A, is Entitled to Access Ferncliff Manor to Conduct
    A Full Investigation ..........................................................................................12

    DRNY, as the P&A, is Entitled to Location Access to Conduct
    Monitoring ........................................................................................................14

    **POINT II**

    **DRNY IS ENTITLED TO A PRELIMINARY INJUNCTION** ..................................15

    DRNY Is Likely to Succeed on the Merits of its Claim ....................................15

    DRNY Will Suffer Irreparable Harm without the Court's Intervention............16

    The Balance of Hardships Weigh Heavily in Favor of DRNY .........................17

    The Provision of Preliminary Relief Serves the Public Interest .......................20

CONCLUSION ................................................................................................................20

# TABLE OF AUTHORITIES

**Cases**

Ala. Disabilities Advocacy Program v. J.S. Tarwater Development Ctr.,
97 F.3d 492 (11th Cir. 1996) .................................................................................4, 8, 17

Ala. Disabilities Advocacy Program v. J.S. Tarwater Development Ctr.,
894 F. Supp. 424 (M.D. Ala. 1995), aff'd 97 F.3d 492 (11th Cir. 1996) ........................................6

Ala. Disabilities Advocacy Program v. SafetyNet Youthcare, Inc.,
65 F.Supp.3d 1312 (S.D. Ala. 2014)...............................................................................15

Benihana, Inc. v. Benihana of Tokyo, LLC, 784 F.3d 887, 895 (2nd Cir. 2015) ...........................15

Ctr. For Legal Advocacy v. Hammons, 323 F.3d 1262 (10th Cir. 2003)........................................8

Chevron, U.S.A., Inc., v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984) ...........................9

Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Ed.,
464 F.3d 229 (2nd Cir. 2006).............................................................6, 10, 11, 14, 16, 18

Conn. Office of Prot. & Advocacy for Persons with Disabilities v. Hartford Bd. of Ed.,
355 F.Supp.2d 649, aff'd 464 F.3d 229 (2nd Cir. 2006)................................................17

Disability Law Ctr. of Alaska, Inc., v. Anchorage Sch. Dist.,
581 F.3d 939 (9th Cir. 2009) ...................................................................... 10-11, 14, 18

Disability Rights N.Y v. North Colonie Bd. of Ed.,
2016 WL 1122055, (N.D. N.Y March 21, 2016)  ..................................................7, 10, 14, 15, 16

Disability Rights N.Y. v. Wise,
2016 WL 1090579 (N.D.N.Y. March 18, 2016)................................................................8, 16, 18

Disability Rights Wis., Inc. v. Wis. Dep't of Pub. Instruction,
463 F.3d 719 (7th Cir. 2006) .....................................................................10, 14, 18

Dunn v. Dunn, 2016 WL 324990 (M.D. Ala. January 27, 2016) ....................................................8

In re Omeprazole Patent Lig, 2005 WL 818821 (S.D.N.Y. 2005),
Aff'd 227 F.R.D. 227 (S.D.N.Y. 2005) ........................................................................19

Iowa Prot. & Advocacy Service, Inc. v. Gerard Treatment Programs, LLC,
152 F.Supp.2d 1150, 1175 (N.D. Iowa 2001) ................................................................18

Michigan Prot. & Advocacy Serv., Inc. v. Flint Community Schools, 2015 WL 7423591 (E.D.
Mich. November 23, 2015) ...........................................................................10, 14

Mississippi Prot. & Advocacy Syst., Inc. v. Cotten, 929 F.2d 1054 (5th Cir. 1991) .................6, 14

Nielson v. AECOM Tech. Corp, 762 F.3d 214, 219-220 (2nd Cir. 2014) .......................................9

Robbins v. Budke, 739 F.Supp. 1479 (D.N.M. 1990) ......................................................5

Pennsylvania Prot. & Advocacy, Inc, v. Royer-Greaves Sch. for Blind,
1999 WL 179797 (E.D.Pa. March 25, 1999)) ............................................11, 13, 15, 16

Wisc. Coalition for Advocacy, Inc. v. Czaplewski, 1
131 F.Supp.2d 1039 (E.D. Wisc. 2001) ...................................................................17

United States v. Mead Corp., 553 U.S. 218, 229 (2001) .................................................9

**Federal Statutes**
29 U.S.C. § 794e(a)(1)(B) ...................................................................................5

29 U.S.C. § 794e(f)(2) ...................................................................6, 7, 10, 12, 16, 19

42 U.S.C. § 6000 et seq ....................................................................................4

42 U.S.C. §§ 10801-10827 ....................................................................................5

42 U.S.C. § 10801 ........................................................................................5, 20

42 U.S.C. § 10801(a) ........................................................................................5

42 U.S.C. § 10801(a)(2) ....................................................................................11

42 U.S.C. § 10805 ...........................................................................................5

42 U.S.C. § 10805(a)(1)(A) ........................................................................12, 16, 20

42 U.S.C. § 10805(a)(3) ..............................................................................7, 12, 16

42 U.S.C. § 10805(a)(4) .................................................................................... 10

42 U.S.C. § 10805(a)(4)(A) ................................................................................. 9

42 U.S.C. § 10805(a)(4)(B) ................................................................................. 9

42 U.S.C. § 10805(a)(4)(C) ............................................................................... 10

42 U.S.C. §§ 15001 et seq. .................................................................................. 4

42 U.S.C. § 15001 ............................................................................................. 20

42 U.S.C. § 15001(a)(5) ...................................................................................... 4

42 U.S.C. § 15001(b)(2). ..................................................................................... 5

42 U.S.C. §§ 15043(a)(2)(A)(i) ........................................................................... 5

42 U.S.C. §§ 15043(a)(2)(B) ...........................................................5, 12, 16, 20

42 U.S.C. §§ 15043(a)(2)(H) ....................................................................6, 12, 16

42 U.S.C. §§ 15043(a)(2)(I) ............................................................................... 12

42 U.S.C. §§ 15043(a)(2)(I)(i) ............................................................................. 9

42 U.S.C. §§ 15043(a)(2)(I)(ii) ............................................................................ 9

42 U.S.C. §§ 15043(a)(2)(I)(iii) ......................................................................... 10

42 U.S.C. §§ 15043(a)(2)(J) ............................................................................... 18

42 U.S.C. §§ 15043(a)(2)(J)(i) ............................................................................. 9

42 U.S.C. §§ 15043(a)(2)(J)(ii) ........................................................................... 9

**Federal Regulations**

42 C.F.R. § 51.42(b) .......................................................................7, 12, 16

42 C.F.R. § 51.42(c) ..........................................................................8, 19

42 C.F.R. § 1386(b)(4) ..........................................................................10

45 C.F.R. § 1386.19 ..........................................................................12, 14

45 C.F.R. § 1386.25(f) ........................................................................................11

45 C.F.R. § 1386.27(b) .......................................................................................12

45 C.F.R. § 1386.27(b)(2)................................................................................7, 17

45 C.F.R. § 1386.27(c)...................................................................................15, 19

45 C.F.R. § 1386.27(c)(2)(i) ...............................................................................15

**State Statutes**
N.Y. Executive Law § 558................................................................................5, 12

**Other Sources**

80 Fed. Reg. 44795 (July 27, 2015).......................................................................8

80 Fed. Reg. 44800 (July 27, 2015).......................................................................7

80 Fed. Reg. 44801 (July 27, 2015).......................................................................8

BRIEF FOR AMICI CURIAE THE DEPT OF EDUCATION AND DEPT. OF HEALTH
CONN. OFFICE OF PROT. & ADVOC. V. HARTFORD BD. OF ED.,
464 F.3D 229 (2ND CIR. 2006) ..........................................................................11

# INTRODUCTION

Disability Rights New York ("DRNY") has received twenty-one complaints from ten complainants that students and residents have been and are being abused and neglected at the School for Adaptive and Integrative Learning (S.A.I.L.) at Ferncliff Manor and the associated residential facilities operated by Ferncliff Manor for the Retarded Inc. doing business as S.A.I.L. at Ferncliff Manor (hereinafter both school and residential facilities will be referred to jointly as "Ferncliff Manor").  As the designated Protection and Advocacy System for persons with disabilities in the State of New York, DRNY investigated the complaints and published a preliminary investigative report.  DRNY brings this action to challenge Ferncliff Manor and William Saich's (the "Defendants") refusal to grant DRNY access to its locations to investigate allegations of abuse and neglect and to monitor the rights and safety of the students and residents, access to records which DRNY is entitled to under Federal Law, and parent and guardian contact information that DRNY requires to complete its investigation of the alleged abuse and neglect. DRNY must have immediate access to Ferncliff Manor and the records and information requested to carry out its federal law mandate to fully investigate complaints of abuse and neglect and provide legal advocacy services for individuals with disabilities.

# FACTS

## DRNY has Received Twenty-one Complaints of Abuse and Neglect of Individuals with Disabilities at Ferncliff Manor

As detailed in the Affidavits of Anastasia Holoboff and Stefen Short, DRNY has received twenty one complaints of serious abuse and neglect from ten separate complainants.  The first complaint was received on September 8, 2014, and the most recent complaint was received on February 8, 2016.

In September 2014, DRNY received complaints alleging serious allegations of abuse and neglect and decided to investigate them. Aff. of Short ¶¶ 5-14; Aff. of Clune ¶ 6. On October 27, 2014, DRNY investigated by visiting the Ferncliff Manor educational and residential facilities, and meeting with Ferncliff Manor staff and students and residents. Aff. of Short ¶ 15; Aff. of Holoboff, ¶¶ 6-11.

In furtherance of its investigation, DRNY requested that Ferncliff Manor produce certain student records. Aff. of Short ¶¶ 16, 19. While awaiting receipt of these student records, DRNY received several complaints that the documents were being tampered with to make it appear that Ferncliff Manor was in compliance with legal requirements when in fact Ferncliff was not in compliance. Aff. of Short ¶¶ 17-18; Aff. of Holoboff ¶¶ 28-30. 36-37, 40, 44, 72. Ferncliff Manor denied tampering with the records, and without challenging DRNY's P&A authority, produced the requested student records between December 2, 2014 and December 24, 2014. Aff. of Short, ¶ 19.

On June 16, 2015, DRNY sent Ferncliff Manor its preliminary findings and report. Aff. of Monthie ¶ 6, Ex. 7. On June 23, 2015, DRNY publically released the report. Aff. of Clune ¶ 7, Ex. 2. The Report chronicles, inter alia, the Defendants' failure to conduct Functional Behavioral Assessment (FBAs), failure to properly create, implement, and monitor Behavioral Implementation Plans (BIPs), failure to properly create and implement Individual Education Programs (IEPs), failure to properly conduct Committee on Special Education (CSE) meetings, and the tampering of documents and complaints of retaliation.

After issuing its preliminary report, DRNY continued to receive complaints of serious abuse and neglect at Ferncliff. Aff. of Holoboff ¶¶ 60-81. Therefore, DRNY determined that further investigation of the new complaints of abuse and neglect, and monitoring of Ferncliff

Manor's remedial efforts was necessary to ensure that abuse and neglect did not continue and that remedial actions were properly implemented.   Aff. of Clune ¶¶ 8-9.

### Ferncliff Manor has Refused to Permit Further Investigation

On June 16, 2015, DRNY requested access to certain student and facility records and contact information necessary to complete its investigation of the new allegations and to monitor whether the problems discovered had been effectively remediated.  Aff. of Monthie, ¶¶ 6-7, Ex 7. On June 25, 2015, DRNY received a letter from the Defendants denying the access requested.  Aff. of Monthie, ¶ 8, Ex. 8.  There followed a meeting between the parties, and then a fruitless exchange of letters between DRNY and Ferncliff Manor, but despite DRNY's repeated requests and citations of legal authority, Ferncliff Manor has failed to comply with these requests.[1] Aff. of Monthie, ¶¶ 9-31.

### ARGUMENT

---

[1]  By letter dated July 7, 2015, DRNY explained in greater detail its federal right to access the records requested.  Aff. of Monthie, ¶ 9, Ex. 9.  At an August 10, 2015 meeting, DRNY agreed to resubmit its access requests.  Aff. of Monthie, ¶ 11.  On September 17, 2015, DRNY renewed its records and facility access request for the purpose of monitoring and investigation, but the Defendants disputed DRNY's federal authority.  Aff. of Monthie at ¶12-13, Exhs. 10-11.

On November 2, 2015, DRNY provided further authority for its records request.  Aff. of Monthie, ¶ 14, Ex. 12.  By letter dated November 6, 2015, Defendants agreed to provide DRNY with the records requested, but stated that it would take "at least 60-90 days" to do so.  Aff. of Monthie, ¶ 15, Ex. 13.  The records have never been produced. Id.  By a letter dated November 19, 2015, DRNY also requested the records of B.T., a Ferncliff Manor student who was alleged to be abused or neglected, and enclosed B.T.'s mother's authorization. Aff. of Monthie, ¶¶ 17-18, Ex. 14. In that letter, DRNY repeated its request for records and agreed to give the Defendants more time to produce the records.  Aff. of Monthie, ¶¶ 16-17.  By letter dated December 3, 2015, the Defendants refused to provide the records requested.  Aff. of Monthie, ¶ 19, Ex. 15.  By letter dated December 22, 2015, DRNY again requested records and contact information and facility access to meet with B.T. Aff. of Monthie, ¶ 23, Ex. 16.  On January 8, 2016, the Defendants via letter resolutely refused to provide DRNY with any of the information, access, or records requested and rejected DRNY's attempts to reach a resolution. Aff. of Monthie, ¶ 24, Ex. 17

By letter dated March 16, 2016, DRNY requested records, contact information, and location access and informed Ferncliff Manor that it DRNY be seeking a preliminary injunction if the request was once again denied.  Aff. of Monthie, ¶ 25; Aff. of Holoboff, ¶ 82, Ex. 21.  By letter dated March 18, 2016, Defendants refused to disclose the records or provide the access requested.  Aff. of Monthie, ¶ 26, Ex. 22; Aff. of Holoboff, ¶ 83.  On March 23, 2016, DRNY sent Ferncliff Manor a copy of DRNY v. North Colonie Bd. of Educ., 2016 WL 1122055 (N.D.N.Y. March 21, 2016), but Defendants continued to refuse DRNY's access requests.  Aff. of Monthie, ¶ 27-28, Exhs. 23-24.

The Defendants' denial of access leaves the students and residents of Ferncliff Manor at continued risk of ongoing harm, injury or death because any DRNY remedial actions are frustrated. With further delay, witnesses to abuse and neglect may become unavailable, or their memory may fade with time. Therefore, immediate injunctive relief is necessary.

## POINT I

### DRNY IS THE DESIGNATED PROTECTION AND ADVOCACY SYSTEM AND IS ENTITLED TO ACCESS TO FERNCLIFF MANOR

### <u>DRNY is New York State's Protection and Advocacy System</u>

DRNY is New York State's designated Protection and Advocacy System and in that capacity operates the Protection and Advocacy for Individuals with Developmental Disabilities ("PADD") program, the Protection and Advocacy for Individuals with Mental Illness ("PAIMI") program, and the Protection and Advocacy for Individual Rights ("PAIR") program.

Responding to the "inhumane and despicable conditions" discovered at New York's Willowbrook State School for people with developmental disabilities and at other facilities, Congress passed the Developmental Disabilities and Bill of Rights Act (DD Act) in 1975 to "protect the human and civil rights of this vulnerable population." <u>Alabama Disability Advocacy Program v. J.S. Tarwater Developmental Center</u>, 97 F.3d 492, 492 (11th Cir. 1996); <u>See</u> <u>also</u> 42 U.S.C. § 6000 <u>et</u>. <u>seq</u>. More recently, Congress enacted the Developmental Disability Assistance and Bill of Rights Act of 2000, which repealed and replaced the 1975 Act. 42 U.S.C. § 15001 <u>et</u>. <u>seq</u>.

The DD Act established the Protection and Advocacy System (P&A) "to protect the legal and human rights of individuals with developmental disabilities," Congress determining that such individuals "are at greater risk than the general population of abuse, neglect, financial and sexual

4

exploitation." 42 U.S.C. §§ 15001(a)(5), (b)(2). To accomplish this goal, Congress granted P&A's broad authority to "investigate incidents of abuse and neglect of individuals with developmental disabilities if the incidents are reported to the system" and to pursue "administrative, legal, and other appropriate remedies to ensure the protection of people with developmental disabilities." 42 U.S.C. §§ 15043(a)(2)(A)(i), 15043(a)(2)(B). Disability Rights New York is the state and federally designated protection and advocacy system in New York. New York Executive Law § 558.

Determining that "individuals with mental illness are vulnerable to abuse and serious injury," and that "State Systems for monitoring compliance with respect to the rights to the rights of individuals with mental illness … are frequently inadequate," 42 U.S.C. § 10801(a), Congress enacted the Protection and Advocacy for Individuals with Mental Illness Act in 1986 to "assure that the constitutional and statutory rights of the mentally ill are protected and to assure investigation of abuse and neglect." Robbins v. Budke, 739 F.Supp. 1479 (D.N.M. 1990); See 42 U.S.C. §§ 10801-10827 (PAIMI Act). The PAIMI Act, which was modeled after the DD Act, created a parallel P&A program for protecting individuals with mental illness. Id. at § 10801. The PAIMI program has similar federal authority to access individuals, facilities, and records. Id. at § 10805.

Finally, the Protection and Advocacy of Individual Rights Act ("PAIR") Act creates a third P&A program to advocate for persons with disabilities that have neither developmental disabilities as defined by the DD Act nor mental illness as defined by PAIMI Act. 29 U.S.C. § 794e(a)(l)(B). The PAIR Act expressly incorporates the authorities contained in the DD Act thereby giving the PAIR program the same general access authority to protect and advocate for persons with

disabilities.  Id. at § 794e(f)(2); See also, Connecticut Office of Protection & Advocacy For

Persons With Disabilities v. Hartford Bd. of Educ., 464 F.3d 229, 240-241 (2nd Cir. 2006).

Together, the DD Act, PAIMI Act and PAIR Act require states to permit the P&A agency

to operate effectively and with broad discretion and independence in gaining access to facilities

and records.  As the Fifth Circuit stated:

> The Act not only describes the range of services to be provided by the protection
> and advocacy systems, it also states that the systems **must have the authority** to
> perform these services. The state cannot satisfy the requirements of the [DD Act]
> by establishing a protection and advocacy system which has this authority in
> theory, but then taking action which prevents the system from exercising that
> authority.

Mississippi Protection & Advocacy System, Inc. v. Cotten, 929 F.2d 1054, 1058-1059 (5th Cir.

1991) (emphasis in original) (noting service providers' affirmative duty to implement policies that

promote effective P&A access).  Indeed, any other reading "would attribute to Congress an intent

to pass an ineffective law."  Alabama Disabilities Advocacy Program v. J.S. Tarwater

Developmental Ctr., 894 F. Supp. 424, 429 (M.D. Ala. 1995), aff'd, 97 F.3d 492, 497 (11th Cir.

1996).

**Ferncliff Manor is a Service Provider, Facility, and Location under the DD Act, PAIMI Act, and PAIR Act**

Ferncliff Manor is a "service provider" "facility" and "location" within the meaning of the

DD Act, the PAIMI Act, and the PAIR Act to which DRNY is entitled to access.  The DD Act

gives DRNY, as the P&A, authority to "have access at reasonable times to any individual with a

developmental disability in a location in which services, supports, and other assistance are

provided to such an individual, in order to carry out the purpose of this part [investigating abuse

and neglect and pursuing remedies]."  42 U.S.C. § 15043(a)(2)(H).  Similarly, the implementing

regulations grant DRNY unaccompanied access to both "public and private service providers,

programs in the State, and to all areas of the service provider's premises that are used by

individuals with developmental disabilities or are accessible to them" in order to conduct a full investigation of an incident of abuse or neglect. 45 C.F.R. § 1386.27(b)(2)(2015).

The term "service provider" is not explicitly defined by the regulations to give DRNY flexibility to access providers as the service system for individuals with developmental disabilities evolves. See Developmental Disabilities Program, 80 Fed. Reg. 44800 (July 27, 2015) (codified at 45 C.F.R. parts 1386) (stating "the law is not explicit about who might be providing such services, intentionally leaving this flexibility to evolve with systems."); Disability Rights New York v. North Colonie Bd. of Educ., __ F.Supp.3d __, 2016 WL 1122055 at *4 (N.D.N.Y. March 21, 2016) (explaining regulations do not define "service provider" "due to the rapidly changing nature of who provides services, and the tremendous variation in the delivery of supports in a broad range of settings") (internal citations omitted)[2]

The PAIMI and PAIR Acts and their implementing regulations apply to Ferncliff Manor. DRNY has authority to access facilities in the State providing care or treatment to persons with mental illness. 42 U.S.C. § 10805(a)(3). The regulations further clarify that DRNY is authorized reasonable unaccompanied access to these facilities to conduct a full investigation of an incident of abuse or neglect. 42 C.F.R. § 51.42(b). The PAIR Act incorporates by reference the same access authority as set forth in the DD Act. 29 U.S.C. § 794e(f)(2).

The Defendants provide both educational and residential services to people with disabilities, as certified by the New York State Education Department (NYSED) and the Office for People with Developmental Disabilities (OPWDD), respectively. Ferncliff Manor is primarily a residential school for people with developmental disabilities. Complaints received from the 10 complainants, the redacted Ferncliff Manor student educational records, and DRNY's site visit to

---

[2] A copy of the decision is attached to plaintiff's memorandum as Exhibit #25.

Ferncliff Manor indicate that there may be students at Ferncliff Manor also diagnosed with a mental illness and/or disabilities other than developmental disabilities and mental illness. According to B.T.'s Justice Center records DRNY reviewed, B.T. has been diagnosed with Type 1 diabetes, moderate MR, and autism. Therefore, the DD Act along with the PAIMI Act and the PAIR Act entitle DRNY to the access requested.

### DRNY, as the P&A, is entitled to the Records Requested

The plain language of the DD Act, the PAIMI Act and by incorporation, the PAIR Act, entitle DRNY to the records requested. As explained by the Eleventh Circuit, "It is clear that the [DD] Act provides express authority for P&As to gain broad access to records, facilities, and residents to ensure that the Act's mandates can be effectively pursued." Alabama Disabilities Advocacy Program, supra, 97 F. 3d at 492; See Center for Legal Advocacy v. Hammons, 323 F.3d 1262, 1270 (10th Cir 2003) ("[T]he statutory phrase 'all records of … any individual' is quite broad."); Disability Rights New York v. Wise, _ F.Supp.3d _, 2016 WL 1090579 at *5 (N.D.N.Y. March 18, 2016) ("Clearly, the purpose of the [P&A] statutes weighs in favor of robust disclosure");[3] Dunn v. Dunn, 2016 WL 324990, at *12 (M.D. Ala January 27, 2016) ("Congress, by authorizing unfettered access to 'all records,' … manifested its view that access to such records is critical to the efficacy of efforts to protect and advocate for the mentally ill.").

The newly enacted DD regulations issued by the Department of Health of Human Services ("HHS") mandate broad authority to access records so that P&As may fulfill their federal mandate. See 80 FR 44795, 44801 (expanding records access regulations is "necessary to meet Congress's underlying intent to ensure necessary access to records to promote the P&A's authority to investigate abuse and neglect and ensure the protection of rights"). HHS' interpretation of the DD

---

[3] A copy of the decision is attached to plaintiff's memorandum of law as Exhibit #26.

Act through these regulations warrants great deference because HHS, through its Administration on Intellectual and Developmental Disabilities ("AIDD"),[4] is authorized to administer the DD Act. 42 U.S.C. § 15004(b). See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); U.S. v. Mead Corp. 553 U.S. 218, 229, 121 S.Ct. 2164 ) (2001); Nielson v. AECOM Tech. Corp., 762 F.3d 214, 219-220 (2ⁿᵈ Cir. 2014) ("Deference under *Chevron* is appropriate if it is 'apparent from the agency's generally conferred authority and other statutory circumstances that Congress would expect the agency to speak with the force of law when it addresses ambiguity in the statute or fills a space in the enacted law.").

To allow a P &A to pursue its mandate, the DD and PAIMI Acts expressly authorize a P&A system to have access to records of persons with disabilities under certain circumstances including:

1. all records of any individual with a developmental disability or mental illness where the P&A system has probable cause to believe the health or safety of the individual is in serious and immediate jeopardy; or in any case of death of an individual with a developmental disability or mental illness; 42 U.S.C. §§ 15043(a)(2)(J)(ii) and 10805(a)(4)(B);

2. all records of an individual with a developmental disability or mental illness who has authorized the P&A system to access the individual's records; 42 U.S.C. §§ 15043(a)(2)(I)(i) and 10805(a)(4)(A);

3. all records of an individual with a developmental disability or mental illness who has a legal guardian who has authorized the P&A system to access the individual's records; 42 U.S.C. §§ 15043(a)(2)(I)(i) and 10805(a)(4)(A);

4. all records of any individual with a developmental disability or mental illness if: (1) the individual cannot authorize access due to his or her mental or physical state; (2) the individual does not have a legal guardian or legal representative; and (3) the P&A system has received a complaint about the individual's treatment or has determined there is probable cause to believe the individual has been subjected to abuse or neglect; 42 U.S.C. §§ 15043(a)(2)(I)(ii) and 10805(a)(4)(B); and

---

[4]  The Administration on Intellectual and Developmental Disabilities (AIDD) is the agency within the Department of Health and Human Services which administers the grants to P&A systems pursuant to the DD, PAIMI and PAIR Acts.

5. all records of any individual with a legal guardian who will not authorize access if: (1) the P&A system has received a complaint about the individual's treatment or has determined there is probable cause of abuse or neglect; (2) the P&A system has contacted the legal guardian and (3) offered assistance to resolve the situation; and (4) the guardian has failed or refused to act on behalf of the individual. 42 U.S.C.§§ 15043(a)(2)(I)(iii) and 10805(a)(4)(C).

The PAIR Act incorporates the DD Act by reference. 42 U.S.C. § 10805(a)(4); 29 U.S.C. § 794e(f)(2). DRNY is therefore entitled to the records requested in its letters beginning on June 16, 2015.

Similarly, the language of the DD Act, and by incorporation the PAIR Act, clearly entitles DRNY to the Ferncliff Manor facility records requested. The Act states that the P&A shall "have access to the records of individuals…and other records that are relevant to conducting an investigation." 42 U.S.C. § 15043(a)(2)(J)(i). The regulations further explain the broad access permitted by this provision, including "[i]nformation in professional, performance, building or other safety standards, and demographic and statistical information relating to a service provider." 42 C.F.R. § 1386(b)(4). Courts have regularly upheld the P&A's broad authority to access records when a complaint has been received. Connecticut Office of Protection & Advocacy For Persons With Disabilities, supra, 464 F.3d at 244; Disability Law Center of Alaska Inc., 581 F.3d 939 (9th Cir. 2009); Disability Rights Wisconsin, supra, 463 F.3d at 719; Disability Rights New York v. North Colonie Bd. of Educ., supra, 2016 WL 1122055; Michigan Protection & Advocacy Serv., Inc., v. Flint Community Schools, 2015 WL 7423591 at *1 (E.D. Michigan November 23, 2015).

**DRNY, as the P&A, is entitled to the Contact Information Requested**

As the P&A, DRNY has the right to the names and contact information of all Ferncliff Manor students' guardians and legal representatives. The Second Circuit has explicitly held that P&A's are entitled to such information:

> We find persuasive the [P& A's] view that Congress intended a P & A system to be able to obtain the names and contact information for the parents or guardians of students at the Academy. By conditioning access on the consent of an individual or, if the individual cannot consent, his or her legal guardian or representative, the Acts require that P & A systems contact the guardians of individuals with disabilities or mental illness if they have the requisite prior cause to believe that abuse or neglect is occurring at the facility. This interpretation is consistent with Congress's view that "family members of individuals with mental illness play a crucial role in being advocates for the rights of individuals with mental illness where the individuals are minors." 42 U.S.C. § 10801(a)(2).

Connecticut Office of Prot. & Advocacy For Persons With Disabilities, supra, 464 F.3d at 244-245. See also Disability Law Center of Alaska, supra, 581 F. 3d at 939 – 940; Pennsylvania Protection & Advocacy, Inc., v. Royer-Greaves Sch. For Blind, 1999 WL 179797 (E.D.Pa March 25, 1999) (P&A entitled to contact information for guardians of students at a residential school).

Both the Second Circuit and the Ninth Circuit have held that Family Educational Rights and Privacy Act (FERPA) does not bar a school from producing contact information requested by the P&A. Connecticut Office of Protection and Advocacy, supra, 464 F. 3d at fn.6; Disability Law Center of Alaska, supra, 581 F. 3d at 939 – 940. See also Brief for Amici Curiae the Department of Education and the Department of Health and Human Services, Connecticut Office of Protection and Advocacy v. Hartford Bd. of Ed., 464 F. 3d 229, 242-44 (2nd Cir. 2006) (No. 05-1240-CV) (joint amicus brief from the US Department of Education (DOE) and Department of Health and Human Services (DHSS) explaining that "FERPA does not bar a P&A from obtaining access to the name of and contact information for a parent, guardian, or other legal representative…." Id. at 15. Moreover, "If a school or other facility could refuse to provide name and contact information, it could interfere substantially with a P&A's investigation of abuse or neglect, thereby thwarting Congress' intent that P&As act to protect vulnerable populations from abuse or neglect." Id.).

The recently promulgated DD Act regulations codify these decisions and explicitly include private residential schools. 45 C.F.R. § 1386.25(f)(2015) ("Educational agencies, including public, private, and charter schools, as well as, public and *private residential* and non–residential schools,

must provide a P&A with the name of and contact information for the parent or guardian of a student for whom the P&A has probable cause to obtain records under the DD Act.") (emphasis added). HHS's interpretation of the regulations is entitled to deference. See, supra, Plaintiff's Memo. at pp. 10.

In short, given Second Circuit precedent, the plain language of the statute and recently promulgated regulations, DRNY's entitlement to the contact information it requested can no longer be seriously questioned.

**DRNY is Entitled to Access Ferncliff Manor to Conduct a Full Investigation**

DRNY has received 21 complaints that students and/or residents in the Defendants' residential school have been subject to abuse or neglect. Under federal and state law, DRNY is authorized to investigate a complaint it receives that alleges abuse or neglect occurring in any public or private entity that provides care, services, treatment and habilitation to persons with disabilities.[5] 42 U.S.C. §§ 15043(a)(2)(B) & (a)(2)(H); 45 C.F.R. § 1386.27(b); 42 U.S.C. §§ 10805(a)(1)(A) & (a)(3); 42 C.F.R. § 51.42(b); 29 U.S.C. § 794e(f)(2); and N.Y. Exec. Law § 558(b). Both the DD Act and PAIMI Act contain parallel provisions authorizing DRNY to access facilities and residents to conduct an investigation and access the records requested in DRNY's letters if the incident of abuse or neglect is reported to DRNY. 42 U.S.C. §§ 15043(a)(2)(B),(I); 42 U.S.C. §§ 10805(a)(1)(A), (4). The PAIR Act expressly incorporates these access provisions from the DD Act. 29 U.S.C. § 794e(f)(2).

Moreover, DRNY is entitled to conduct a "full investigation," which the implementing regulations define as "access to service providers, individuals, with developmental disabilities and

---

[5] Under the DD Act implementing, a "complaint" is defined broadly as: "The term 'complaint' includes, but is not limited to, any report or communication, whether formal or informal, written or oral, received by the P&A system, including media accounts, newspaper articles, electronic communications, telephone calls (including anonymous calls) from any source alleging abuse or neglect of an individual with a developmental disability." 45 C.F.R. §1386.19.

records authorized under these regulations, that are necessary for a P&A system to make a determination" regarding suspected abuse or neglect. 45 C.F.R. § 1386.19. "Full investigations may be conducted independently <u>or</u> in cooperation with other agencies authorized to conduct similar investigations." <u>Id.</u> (emphasis added).

Here, DRNY received multiple reports of abuse and neglect at the Ferncliff Manor in both educational and the residential programs from ten separate complainants. As a service provider of education, care and treatment to people with disabilities within the meaning of the DD Act, PAIMI Act, and PAIR Act, Ferncliff Manor is subject to DRNY's access authority to investigate allegations of abuse and neglect and monitor the rights and safety of students and residents. <u>See Pennsylvania Protection & Advocacy, Inc.</u>, <u>supra</u>, at *9–10 (holding that the P&A access authority includes residential schools). DRNY visited the Ferncliff Manor facility and interviewed staff members. Furthermore, DRNY reviewed redacted educational records for each of the Ferncliff Manor students, investigation records from the Justice Center, NYSED, and OPWDD regarding abuse and neglect allegations at Ferncliff Manor and citing Ferncliff Manor with multiples areas of deficiency that place residents at risk of injury or serious impairment. Lastly, DRNY reviewed the Justice Center records relating to B.T.

The Defendants continue to deny access necessary to conduct a "full investigation," as required by federal law. Ferncliff Manor's initial cooperation evaporated when DRNY's preliminary investigation report revealed serious concerns of abuse and neglect and sparked the interest of other investigatory agencies.

The findings of other investigatory agencies have corroborated the majority of DRNY's preliminary findings. DRNY's right to a "full investigation" includes monitoring remediation of the abuse and neglect and working "in collaboration with" other investigatory agencies to do so.

45 C.F.R. § 1386.19; See, Infra, Plaintiff's Memo. at pp. 14-15. Ferncliff Manor may not shut out DRNY because it disagrees with its preliminary findings, or because those preliminary findings have triggered investigations by other investigatory agencies. P&A's must have actual, as opposed to, theoretical authority to access service providers and service providers may not take "action which prevents the [P&A] system from exercising that authority." Mississippi Protection & Advocacy System, Inc., supra, 929 F.2d at 1059. In creating the P&A system to protect the civil and human rights of individuals with disabilities, Congress could not have intended such an absurd result.

## DRNY, as the P&A, is Entitled to Location Access to Conduct Monitoring

It is well settled that the P&A is entitled to physically access Ferncliff Manor as a service provider of both educational and residential services. Courts have uniformly confirmed a P & A's access authority extends to public schools serving students with disabilities. See e.g., Disability Law Center of Alaska Inc., v. Anchorage School District, 581 F.3d 986 (9th Cir. 2009); Disability Rights Wisconsin, supra, 463 F.3d 719; Disability Rights New York v. North Colonie Bd. of Educ., supra, 2016 WL 1122055; Michigan Protection & Advocacy Services, Inc. v. Flint County School., F.Supp3d. __, 2015 WL 7423591, at *1 (E.D. Mich. Nov. 23, 2015). The Second Circuit has held that the DD Act, PAIMI Act and PAIR Act authorize P&A access to public school programs:

> To the extent that the [school program] is a location that provides care or treatment to individuals with disabilities within the meaning of PAIR and the DD Act, a [P & A system] is authorized to have reasonable access to the [school program] and its students during school hours both to investigate specific allegations *and to monitor whether the school is respecting students' rights and safety*.

Connecticut Office of Protection & Advocacy for Persons with Disabilities, supra, 464 F.3d at 242 (emphasis added). Furthermore, the DD Act's implementing regulations authorize "reasonable unaccompanied access to service providers for routine circumstances" for the purpose of "monitoring compliance with respect to the rights and safety of individuals with developmental

disabilities." 45 C.F.R. §§ 1386.27(c), (c)(2)(ii).

Time, and again, federal courts have confirmed the P&A's authority to access service providers providing primarily residential services. See, e.g., Mississippi Protection & Advocacy Systems Inc., supra, 19 F. 2d 1054; Alabama Disabilities Advocacy Program v. SafetyNet Youthcare, Inc., 65 F. Supp. 3d 1312, 1314 (S.D. Ala. 2014). This access includes residential schools providing both services. Pennsylvania Protection & Advocacy, Inc. supra, 1999 WL 179797 (P&A system authorized to access contact information for students at a residential school where the P&A had received complaints alleging "systemic neglect."). DRNY is therefore clearly entitled to physically access Ferncliff Manor to meet with B.T. and complete its investigation and to monitor remedial efforts.

## POINT II

## DRNY IS ENTITLED TO A PRELIMINARY INJUNCTION

DRNY is entitled to injunctive relief because it suffers irreparable harm due to Defendants' unjustified obstruction of its statutory obligation to investigate complaints of abuse and neglect. When seeking a preliminary injunction a party must demonstrate:

> (1) a likelihood of success on the merits or … sufficiently serious questions going to the merits to make them fair ground for litigation and a balance of hardships tipping decidedly in the plaintiff's favor; (2) a likelihood of irreparable injury in the absence of an injunction; (3) that the balance of hardships tips in the plaintiff's favor; and (4) that the public interest would not be disserved by the issuance of an injunction.

Benihana, Inc. v. Benihana of Tokyo, LLC, 784 F.3d 887, 895 (2nd Cir. 2015) (citations omitted); See e.g., Disability Rights New York v. North Colonie Bd. of Ed., supra, 2016 WL 1122055 (issuing an order restraining defendant from denying DRNY access to defendant school to investigate allegations of abuse and neglect).

### DRNY is Likely to Succeed on the Merits of its Claim

As set forth in detail in Point I, _supra_, the access requested by DRNY falls squarely within DRNY's federal access authority. The DD Act, PAIMI Act, and PAIR Act authorize DRNY access to public and private facilities, including residential schools which provide services to individuals with developmental disabilities, mental illness, and other disabilities. 42 U.S.C. § 15043(a)(2)(B); 45 C.F.R. § 1386.27(b)(2); 42 U.S.C. § 10805(a)(1)(A); 42 C.F.R. § 51.42(b); and 29 U.S.C. § 794e(f)(2). See Connecticut Office of Protection and Advocacy, _supra_, 464 F.3d 229; Pennsylvania Protection & Advocacy, Inc., _supra_, 1999 WL 179797; Disability Rights New York v. North Colonie Bd. of Ed., _supra_, 2016 WL 1122055 (granting partial summary judgment to P&A seeking preliminary and permanent injunctive relief to access defendants' school); Disability Rights New York v. Wise, _supra_, 2016 WL 1090579 at *6-7 (rejecting argument that "access to entirety of information" included in reports requested was not essential to P&A's system's statutory mandates as contrary to the explicit language of the statutes granting P&A systems access to such reports).

**DRNY Will Suffer Irreparable Harm without the Court's Intervention**

DRNY will suffer irreparable harm if denied access to Ferncliff Manor. Based on multiple reported incidents of abuse and neglect, and DRNY's site visit, interviews, and review of Ferncliff Manor records, DRNY's access to Ferncliff Manor is fundamental to fulfilling its mandate to fully investigate incidents of abuse and neglect involving persons with disabilities. 42 U.S.C. §§ 15043(a)(2)(B), (a)(2)(H); 42 U.S.C. §§ 10805(a)(1)(A), (a)(3): 29 U.S.C. § 794e(f)(2). Moreover, access to the contact information requested is vital to informing legal guardians, legal representatives, and adult students about DRNY's services, and about the allegations DRNY has received. These individuals may choose to authorize DRNY to access their records, and to protect them from neglect and advocate for their rights.

DRNY suffers irreparable harm because it cannot exercise its federal duty to protect and advocate for students with disabilities at Ferncliff.  Further delay also presents the continued risk of further record tampering as alleged by two complainants.  Moreover, the ongoing harm revealed by the OPWDD and NYSED reports demonstrates that DRNY's access is necessary to continue its investigation, monitor the implementation of remedial action and protect the legal rights of the affected students and residents.

Federal courts have long held the denial of a Protection & Advocacy system's access authority constitutes irreparable harm.  See Connecticut Office of People and Advocacy v. Hartford Bd. of Educ., 355 F.Supp.2d 649, 653, aff'd on other grounds, 464 F.3d 229 (2d Cir. 2006) (district court holding "a protection and advocacy system's inability to meet its federal statutory mandate to protect and advocate the rights of disable people constitutes irreparable harm"); See also Wisconsin Coalition for Advocacy, Inc., v. Czaplewski, 131 F.Supp.2d 1039, 1051 (E.D. Wis. 2001) (holding "the defendants' refusal to provide [plaintiff] with records that [plaintiff] is entitled to review…does, in a very real and readily identifiable way, pose a threat to the plaintiff being able to discharge its obligations. And no amount of damages will remedy that sustained harm.").

The irreparable harm sustained by DRNY, and its constituent Ferncliff Manor students and residents, demonstrate that immediate injunctive relief is necessary and appropriate.

### The Balance of Hardships Weighs Heavily in Favor of DRNY

Defendants suffer no hardship because DRNY is entitled by law to access both the physical Ferncliff Manor sites, contact information, and records for purposes of conducting an investigation and for monitoring.  Defendants cannot claim an interest in avoiding investigations of abuse or neglect regarding individuals with disabilities.  Alabama Disabilities Advocacy Program., supra,

97 F.3d at 499. Nor can they rely on the privacy concerns of its residents because DRNY has a federal right to access their facility and records. Iowa Prot. & Advocacy Servs. Inc. v. Gerard Treatment Programs, LLC, 152 F. Supp. 2d 1150, 1175 (N.D. Iowa 2001); Connecticut Office of Protection and Advocacy, supra, 464 F. 3d at fn.6; Disability Law Center of Alaska, supra, 581 F. 3d at 939 – 940; Disability Rights Wisconsin., Inc., supra, 463 F.3d at 719-730 ("The point of the federal P&A statutes is to establish and equip a specialized agency to look out for individuals with mental illness. Confounding the agency in the name of an illusory concern for privacy defeats that very important goal."); Disability Rights New York v. Wise, supra, 2016 WL 1090579 at *5 (since P&A's owe duty of confidentiality, records could not be withheld from P&A "based on their confidentiality"). Defendants would benefit from permitting DRNY access so DRNY may identify for correction any issues relating to abuse and neglect at Ferncliff Manor. Indeed, DRNY's preliminary investigation has already led to NYSED and OPWDD corroborating DRNY's findings and identifying multiple areas of correction.

Ferncliff Manor has already been investigated by multiple agencies. DRNY's presence to meet with B.T. and further investigate would pose no greater burden. The records DRNY seeks already exist and Ferncliff Manor has not been asked to create new records or reports. The contact information for family or guardians of students must also be readily available to Ferncliff Manor. Producing the records requested is not a burden that would justify denial of injunctive relief.

Despite the minimal burden posed by DRNY's access requests, DRNY made good faith attempts for eight months to negotiate a solution that would minimize the Defendants' burden. Even though federal authority permits DRNY to access the records requested within three business days, 42 U.S.C. § 10543(a)(2)(J), DRNY offered Ferncliff Manor additional time, but to no avail.

The 60-to-90 day timeframe for records production which Ferncliff Manor offered and then reneged on has long since passed.

Nor can Defendants be excused from complying with Federal law because other state agencies are also investigating Ferncliff Manor. By abusing and neglecting its students, Ferncliff Manor has brought a slew of investigations on itself. Investigations caused by its own wrongdoing do not create a burden that excuses it from complying with Federal law. See In re Omeprazole Patent Litig., No. M-21-81(BSJ), 2005 WL 818821, at *12 (S.D.N.Y. Feb. 18, 2005) aff'd, 227 F.R.D. 227 (S.D.N.Y. 2005) ("The contention can only be charitably characterized as 'chutzpah,' described by one court as '[c]ommonly used to describe the behavior of a person who kills his parents and pleads for the court's mercy on the ground of being an orphan.'").

Rather, the investigations of multiple agencies into the Defendants' ongoing neglect and abuse of its students and residents only increases the urgency for DRNY to complete its investigation. In short, Ferncliff Manor is not entitled to pick and choose which agencies' directives it will follow or determine the scope of DRNY's federally-authorized investigation.

In stark contrast, DRNY suffers great hardship because it cannot fulfil its statutory duty to fully investigate reported incidents of abuse or neglect and monitor facilities to ensure compliance with the rights and safety of residents. 42 U.S.C. § 15043(a)(2)(B); 42 U.S.C. § 10805(a)(1)(A); 29 U.S.C. § 794e(f)(2); 45 C.F.R. § 1386.27(c); 42 C.F.R. § 51.42(c). Furthermore, DRNY is prevented from informing individuals, parents, guardians, and representatives about the allegations received and offering these individuals the option to authorize access to their or their student's records. DRNY is also potentially harmed by the ongoing tampering of records to hide ongoing or past abuse and/or neglect. Aff. of Short ¶¶ 17-18; Aff. of Holoboff ¶¶ 28-30. 36-37, 40, 44, 72. Since 2014, DRNY has continued to receive complaints about Ferncliff Manor. Aff. of Holoboff

¶¶ 60-81.  Consequently, the students and residents of Ferncliff Manor continue to be at risk of or subject to abuse and neglect and denied access to the federal protection and advocacy services to which they are entitled.

### The Provision of Preliminary Relief Serves the Public Interest

Congress has found that there is a strong public interest in having a P&A system which has the authority to ensure that the rights of persons with disabilities is protected.  See Congressional Findings and Purpose.  42 U.S.C. §10801.  "[T]he goals of the Nation properly include a goal of providing individuals with developmental disabilities with the information, skills, opportunities, and support to … live free of abuse, neglect, financial and sexual exploitation, and violations of their legal and human rights…." 42 U.S.C § 15001.  Like DRNY, the public has an interest in ensuring people with disabilities at Ferncliff are free from abuse and neglect.

### CONCLUSION

For all the above reasons, this Court should issue a preliminary injunction granting Plaintiff access to Defendant's records, contact information and facility so that it may fulfill its investigatory and monitoring purposes.

Dated: May 13, 2016
       Brooklyn, New York

                           Respectfully submitted,

                           **/s/ Jonathan Garvin**

                           JONATHAN GARVIN (JG6299)
                           ANASTASIA L. HOLOBOFF (AH8069)
                           DISABILITY RIGHTS NEW YORK
                           25 Chapel Street, Suite 1005
                           Brooklyn, New York 11201
                           (518) 432-7861
                           (718) 797-1161 (fax) (not for service)

                           JENNIFER MONTHIE (JM4077)
                           CLIFF ZUCKER (CZ2254)

DISABILITY RIGHTS NEW YORK
725 Broadway, Suite 450
Albany, New York 12207
(518) 432-7861
(518) 427-6561 (fax) (not for service)

*Attorneys for Plaintiff*