# Exhibit 26

## WESTLAW

2016 WL 1090579
Only the Westlaw citation is currently available.
United States District Court,
N. D. New York.

**Disability Rights New York v. Wise**
United States District Court, N.D. New York.    March 18, 2016    --- F.Supp.3d ----    2016 WL 1090579    *(Approx. 10 pages)*

Disability Rights New York, Plaintiff,

v.

Jeff Wise, in his official capacity as Executive Director of the New York
State Justice Center for the Protection of People with Special Needs, et al.,
Defendants.

1:15-cv-32 (GLS/CFH)
Signed March 18, 2016

### Synopsis

**Background:** Nonprofit organization designated as New York's protection and advocacy
(P & A) agency filed § 1983 action seeking declaratory judgment that officials at New York
State Justice Center for the Protection of People with Special Need violated its rights
under Protection and Advocacy for Individuals with Mental Illness (PAIMI) Act,
Developmental Disabilities Assistance and Bill of Rights (DD) Act, and state law by failing
to provide it with complete, unredacted copies of all records requested pursuant to its P &
A authority. Defendants moved to dismiss.

**Holding:** The District Court, Gary L. Sharpe, J., held that P & A agency was authorized to
review complete, unredacted records prepared by New York State Justice Center.

Motion denied.

### West Headnotes (5)

Change View

**1**    **Mental Health** 🔑    Records and confidential communications
New York's designated protection and advocacy (P & A) agency was
authorized by Protection and Advocacy for Individuals with Mental Illness
(PAIMI) Act and Developmental Disabilities Assistance and Bill of Rights (DD)
Act to review complete, unredacted records prepared by New York State
Justice Center for the Protection of People with Special Needs in connection
with its investigations of alleged incidents of abuse, neglect, and injury of
individuals with mental illness or developmental disabilities, including identities
of individuals, underlying treatment records, individual service recipient
information, and draft reports, which had to be provided in accordance with
statutorily mandated time lines. 42 U.S.C.A. §§ 10805(a)(4), 10806(b)(3)(A);
Developmental Disabilities Assistance and Bill of Rights Act of 2000 § 143, 42
U.S.C.A. § 15043(a)(2)(I), (c)(2); 42 C.F.R. § 51.41(c)(2); 45 C.F.R. §
1386.25(b)(2).

**2**    **Statutes** 🔑    Plain Language; Plain, Ordinary, or Common Meaning
       **Statutes** 🔑    Undefined terms
       **Statutes** 🔑    Statute as a Whole; Relation of Parts to Whole and to One
Another
Statutory interpretation must begin with plain language, giving all undefined
terms their ordinary meaning while attempting to ascertain how reasonable
reader would understand statutory text, considered as a whole.

**SELECTED** TOPICS

General Rules of Construction

Judicial Scrutiny Administrative Agency
Construction of Statute

Intent of Enactors of an Ordinance or
Statute

Privileged Communications and
Confidentiality

Counselors and Mental Health
Professionals

Confidentiality of Mental Patient
Psychiatric Records

**Secondary Sources**

**s 410. Generally**

82 C.J.S. Statutes § 410

...The starting point in statutory construction is
to determine the legislative intent from the
language of the statute itself. The statutory
words should be given the meaning intended
by the lawmakers. W...

**CONTROLLED SUBSTANCES /**

Controlled Substances Hdbk. Act

...Sec. [U.S.C.] 101 [801] Congressional
findings and declarations: controlled
substances 101a [801a] Congressional
findings and declarations: psychotropic
substances 102 [802] Definitions Part B --
Autho...

**APPENDIX III - JUDICIAL OPINI**

FDA Enforcement Man. Appendix III

...No. 74-215 Supreme Court of the United
States 421 U.S. 658; 95 S. Ct. 1903 2d 489
Argued March 18-19, 1975 June 9, 1975 Mr.
Chief Justice Burger delivered the opinion of
the Court. We granted certiorar...

See More Secondary Sources

**Briefs**

**Petition**

1985 WL 694977
U.S. TRUST CORPORATION, Petitioner, v.
THE BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM, Florida
Department of Banking and Finance
Conference of State Bank Supervisors,
Florida Bankers Association, and Sun
Bank/Palm Beach, Respondents.
Supreme Court of the United States
Aug. 05, 1985

...The caption of the case in this Court lists all
the parties to the proceeding. Pursuant to
Rule 28.1 of this Court, U.S. Trust Corporation
represents that it has no parent companies or
affiliates, and ...

**DEPT. OF PUBLIC SAFETY on behalf of
Henry C. LEE, Comm., OFFICE OF
ADULT PROBATION, on behalf of
Robert BOSCO, Director, John
ARMSTRONG, Commissioner,
Petitioners, v. Samuel POE, John DOE,
Respondents.**

2002 WL 32102968
DEPT. OF PUBLIC SAFETY on behalf of
Henry C. LEE, Comm., OFFICE OF ADULT
PROBATION, on behalf of Robert BOSCO,
Director, John ARMSTRONG, Commissioner,
Petitioners, v. Samuel POE, John DOE,
Respondents.
Supreme Court of the United States

3   **Administrative Law and Procedure**   ✿━  Deference to agency in general
State agency's interpretation of federal statutes is subject to de novo review in
federal court.

4   **Administrative Law and Procedure**   ✿━  Plain, literal, or clear meaning;
ambiguity
**Statutes**   ✿━  Purpose and intent; determination thereof
When statutory language is ambiguous, court can look to statute's purpose as
well as interpretations of agencies charged with enforcing it.

5   **States**   ✿━  Conflicting or conforming laws or regulations
State law is preempted to extent of any conflict with federal statute, or where,
under circumstances of particular case, challenged state law stands as
obstacle to accomplishment and execution of full purposes and objectives of
Congress.

## Attorneys and Law Firms

FOR THE PLAINTIFF: ANDREW A. STECKER, ESQ., CLIFF ZUCKER, ESQ., MICHAEL
W. GADOMSKI, ESQ., Disability Rights New York, 725 Broadway, Suite 450, Albany, NY
12207.

FOR THE DEFENDANTS: HON. ERIC T. SCHNEIDERMAN, New York State Attorney
General, HELENA LYNCH, Assistant Attorney General, The Capitol, Albany, NY 12224.

### MEMORANDUM-DECISION AND ORDER

Gary L. Sharpe, U.S. District Judge

### I. Introduction

*1 Plaintiff Disability Rights New York (DRNY) commenced this action against defendants
Jeff Wise, in his official capacity as Executive Director of the New York State Justice
Center for the Protection of People with Special Needs (hereinafter "the Justice Center"),
and Robin A. Forshaw, in her official capacity as General Counsel of the Justice Center,
pursuant to 42 U.S.C. § 1983, the Protection and Advocacy for Individuals with Mental
Illness (PAIMI) Act,[1] and the Developmental Disabilities Assistance and Bill of Rights Act
of 2000[2] (hereinafter "the DD Act"). (*See generally* Compl., Dkt. No. 1.) Pending is
defendants' motion to dismiss the complaint for failure to state a claim. (Dkt. No. 10.)[3]
For the reasons that follow, defendants' motion is denied.

### II. Background[4]

In order to ensure that the rights of individuals with mental illness or developmental
disabilities are protected, the PAIMI and DD Acts condition certain federal funding for
states on the establishment of protection and advocacy (hereinafter "P & A") systems.
*See* 42 U.S.C. §§ 10801(b)(1), 10803, 15001(b)(2), 15043(a)(2)(A); *Disability Advocates,
Inc. v. N.Y. Coal. for Quality Assisted Living, Inc.*, 675 F.3d 149, 152–53 (2d Cir.2012);
*Conn. Office of Prot. & Advocacy for Pers. with Disabilities v. Hartford Bd. of Educ.*, 355
F.Supp.2d 649, 654 (D.Conn.2005), *aff'd*, 464 F.3d 229 (2d Cir.2006). DRNY, an
independent nonprofit organization, is New York's designated P & A agency. (Compl. ¶¶
1, 7-9.) The Justice Center, an agency within the New York State Executive Department,
is charged with investigating reported incidents of abuse, neglect, or injury of persons
with disabilities. (*Id.* ¶¶ 19-20.) Under the PAIMI and DD Acts, DRNY has the authority to
review the records of individuals with mental illness or developmental disabilities under
certain circumstances,[5] including reports prepared by agencies charged with
investigating alleged incidents of abuse, neglect, and injury of such individuals. (*Id.* ¶¶ 12-
13, 15); *see* 42 U.S.C. §§ 10806(b)(3)(A), 15043(c)(2). When DRNY makes a request for
access to such records, such records must be provided promptly. (Compl. ¶ 17); *see* 42
U.S.C. § 15043(a)(2)(J)(i) (requiring that requested records be provided not later than
three business days after the P & A system makes a written request); 42 C.F.R. §
51.41(a) ("Access to records shall be extended promptly to all authorized agents of a P &
A system."). If access to such records is delayed or denied, DRNY must be promptly
provided with a written statement of reasons for the denial. (Compl. ¶ 18); *see* 42 C.F.R.
§ 51.43; 45 C.F.R. § 1386.26.

July 19, 2002

...FN* Counsel of Record Filed: 02/22/99 Doe,
et al. v. Public Safety, et al. Assigned to:
Judge Robert N. Chatigny Demand: $0,000
Nature of Suit: 950 Lead Docket: None
Jurisdiction: Federal Question Dkt ...

**JOINT APPENDIX, VOL. II**

2013 WL 4509638
DOYLE RANDALL PAROLINE, Petitioner, v.
UNITED STATES OF AMERICA, ET AL.,
Respondents.
Supreme Court of the United States
Aug. 19, 2013

...FN* Counsel of Record FOR THE
GOVERNMENT: MR. WILLIAM P. BALDWIN
ASSISTANT U.S. ATTORNEY 110 North
College, No. 700 Tyler, Texas 75702 FOR
THE DEFENDANT: MR. F. R. "BUCK" FILES,
JR. BAIN FILES LAW FIRM...

See More Briefs

**Trial Court Documents**

**U.S. v. Bruffy**

2010 WL 7384445
UNITED STATES OF AMERICA, v. Robert
BRUFFY, Defendant.
United States District Court, E.D. Virginia.
Aug. 31, 2010

...The defendant, ROBERT BRUFFY, was
represented by Kenneth Troccoli, A.F.P.D.
The defendant was found guilty on Count 1 of
the Indictment. Accordingly, the defendant is
adjudged guilty of the following c...

**USA, v. MAALI, et al.**

2005 WL 6073953
USA, v. MAALI, et al.
United States District Court, M.D. Florida.
Sep. 08, 2005

...The defendant was found guilty on Counts
1, 4-6, 8, 9, 12-14, 16-22, 24-32, 34-37, 39-
43, 45-51, 53, 54, 56-71 of the Third
Superseding Indictment. Accordingly, the
court has adjudicated that the defen...

**U.S. v. Bussell**

2013 WL 1808148
UNITED STATES OF AMERICA, v. [ ... ]
Gerrid BUSSELL.
United States District Court, E.D. Tennessee.
Mar. 08, 2013

...(For Offenses Committed On or After
November 1, 1987) [X] pleaded guilty to
count(s): 1 and 7 of the Indictment [] pleaded
nolo contendere to count(s) _ which was
accepted by the court. [] was found gu...

See More Trial Court Documents

*2 In November 2012, F.S., an individual who suffered from a mental illness, committed suicide in a facility operated by the New York State Department of Corrections and Community Supervision (DOCCS). (Compl. ¶¶ 26-27.) In October 2014, DRNY reviewed a redacted version of an investigatory report completed by a predecessor agency of the Justice Center, which concluded that F.S. received inadequate mental health treatment during his incarceration. (*Id.* ¶¶ 26, 28-29, 31.) The information contained in the redacted report caused DRNY to determine it had probable cause to believe that F.S. was abused and neglected while in the custody of DOCCS. (*Id.* ¶ 31.) Based on that belief, DRNY requested that the Justice Center provide it with "a complete, unredacted copy of the investigatory records relating to F.S." (*Id.* ¶ 32.) DRNY again requested F.S.' records on two subsequent occasions, but never received a response from the Justice Center. (*Id.* ¶¶ 34-35.)

In October 2013, DRNY received a complaint of abuse of L.B., who suffers from a mental illness and resided at a facility operated by the New York State Office of Mental Health. (*Id.* ¶¶ 36, 38.) On three separate occasions beginning in November 2013, DRNY requested that the Justice Center provide it with records regarding the alleged abuse of L.B. (*Id.* ¶¶ 39, 41, 43.) In March 2014, the Justice Center responded to DRNY, explaining that it had not yet completed its investigation into the alleged abuse of L.B. (*Id.* ¶ 44.) After contacting the Justice Center on three more occasions, and providing a signed release from L.B. authorizing the release of the requested records, in October 2014, DRNY received the Justice Center's report, which had been "heavily" redacted. (*Id.* ¶¶ 45, 47-48, 50, 52-53.)

In October 2013, DRNY also received a complaint of abuse and neglect of A.T., a minor with a developmental disability who resided in a facility licensed by the Office of Child and Family Services and approved by the New York State Education Department. (*Id.* ¶¶ 54, 56.) DRNY requested "all documents related to the Justice Center's investigation of the alleged abuse and neglect of A.T." in April 2014. (*Id.* ¶ 57.) After providing a signed consent form from A.T.'s guardian authorizing the release of the requested records, the Justice Center provided DRNY "heavily" redacted documents. (*Id.* ¶¶ 58-60.)

In March 2014, DRNY received a complaint of abuse and neglect of R.T., a person with a developmental disability who resided in a facility licensed by the New York State Office for People with Developmental Disabilities. (*Id.* ¶¶ 61-63.) On March 20, 2014, DRNY requested "information regarding the steps the Justice Center took to investigate the alleged abuse and neglect," and the Justice Center responded, on April 18, 2014, that it had not yet completed its investigation. (*Id.* ¶¶ 64-65.) Thereafter, DRNY contacted the Justice Center numerous times in April, May, and June 2014, by phone and mail, requesting an update on the status of the investigation and providing a release signed by R.T.'s guardian, authorizing release of the investigative file. (*Id.* ¶¶ 66, 68, 70, 73-74.) DRNY received no response to these requests until October 9, 2014, at which time the Justice Center provided "heavily" redacted documents. (*Id.* ¶¶ 67, 69, 72, 75-76.)

DRNY alleges that it made efforts to resolve the dispute regarding its right to timely access of unredacted records from the Justice Center, but the Justice Center maintained that it is not required to provide an investigative report to DRNY until the Justice Center has determined that the report is final, and further, it may redact from the records it provides DRNY information that identifies individuals reporting abuse or neglect to the Justice Center, staff members who are subject to abuse or neglect allegations, and individuals cooperating in investigations, as well as mental health provider records or information and individual service recipient information. (*Id.* ¶¶ 77-84, 86.) The Justice Center based its position on New York Executive Law § 558(b)(iii), New York Public Officers Law § 96, and New York Social Services Law § 496. (*Id.* ¶ 85.) Because it could not resolve the dispute, on January 9, 2015, DRNY commenced this action seeking a declaratory judgment that defendants have violated DRNY's rights under the PAIMI and DD Acts and New York Executive Law § 558, New York Public Officers Law § 96, and New York Social Services Law § 496, as interpreted and applied by defendants, are preempted by federal law. (*Id.* at 17–18.) DRNY further seeks an injunction ordering defendants to provide DRNY with complete, unredacted copies of all records requested pursuant to its P & A authority, including those regarding F.S., L.B., A.T., and R.T., as well as ordering defendants to provide timely and complete responses to all future records requests made pursuant to DRNY's P & A authority, and an award of attorney's fees and costs. (*Id.* at 18.) Shortly after this action was filed, defendants filed the pending pre-answer motion to dismiss, (Dkt. No. 10), which the court now considers.

### III. Standard of Review

*3 The standard of review applicable to Fed. R. Civ. P. 12(b)(6) motions is well settled and will not be repeated here. For a full discussion of the standard, the court refers the parties to its decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F.Supp.2d 215, 218 (N.D.N.Y.2010), *abrogated on other grounds by Altman v. J.C. Christensen & Assocs., Inc.*, 786 F.3d 191 (2d Cir.2015).

## IV. Discussion

### A. Access to Records Under the PAIMI and DD Acts

1   Defendants argue that DRNY's complaint should be dismissed because the PAIMI and DD Acts do not authorize the Justice Center to disclose anything other than what was included in its responses to DRNY. (Dkt. No. 10, Attach. 1 at 13-21.) Specifically, defendants contend that the PAIMI and DD Acts do not require disclosure of the information redacted by the Justice Center, and authorize the disclosure of only finalized reports. (*Id.* at 14–19.) Further, they assert that the Justice Center has not interfered with DRNY's federal mandates. (*Id.* at 19–20.) DRNY counters, and the court agrees, that it is authorized to review complete, unredacted records from the Justice Center, which must be provided in accordance with the required time lines. (Dkt. No. 16 at 8-19.)

DRNY seeks the records of F.S. and L.B. under the PAIMI Act, and the records of A.T. and R.T. under the DD Act. (Compl. ¶¶ 88-111.) As, defendants point out, the relevant provisions of the respective statutes are substantially identical. (Dkt. No. 10, Attach. 1 at 13 n.6.) In particular, under the PAIMI Act, DRNY is entitled to access "all records" of individuals whose records are subject to disclosure,[6] and the term "records" includes "reports prepared by an agency charged with investigating reports of incidents of abuse, neglect, and injury occurring at [a] facility that describe incidents of abuse, neglect, and injury occurring at such facility and the steps taken to investigate such incidents." 42 U.S.C. §§ 10805(a)(4); 10806(b)(3)(A). Similarly, under the DD Act, DRNY has access to "all records" of individuals whose records are subject to disclosure, including "a report prepared by an agency or staff person charged with investigating reports of incidents of abuse or neglect, injury, or death occurring at [any location at which services, supports, or other assistance is provided to individuals with developmental disabilities], that describes such incidents and the steps taken to investigate such incidents." *Id.* § 15043(a)(2)(I), (c)(2).

Defendants argue that neither statute authorizes the Justice Center to identify individuals, including witnesses, subjects, and sources, or to provide underlying treatment records or individual service recipient information. (Dkt. No. 10, Attach. 1 at 14.) To that end, defendants claim that the words "describe" and "report" qualify the disclosures the Justice Center must make under the PAIMI and DD Acts. (*Id.* at 14–16.) They argue that DRNY has no right to access the Justice Center's "records," but only its "reports." (*Id.* at 15.) Further, they contend that only the portion of the Justice Center's reports that "describe" alleged incidents of abuse or neglect, the steps taken to investigate the incidents, and the information and records used and reviewed in preparing the reports are required to be disclosed by the Justice Center. (*Id.*) According to defendants, only the facilities that render care and treatment to individuals whose records are subject to disclosure may actually identify individuals or release the facilities' own records. (*Id.* at 14) Based on this interpretation of the statutes, the Justice Center redacted such information from the reports it provided to DRNY. (*Id.*) After analyzing the PAIMI and DD Acts, however, the court disagrees that the statutory language at issue limits access to records in the manner defendants suggest.

2   *4 As the Second Circuit has explained, statutory interpretation must "begin with the plain language, giving all undefined terms their ordinary meaning while attempt[ing] to ascertain how a reasonable reader would understand the statutory text, considered as a whole." *Deutsche Bank Nat'l Trust Co. v. Quicken Loans Inc.*, 810 F.3d 861, 868 (2d Cir.2015) (internal quotation marks and citation omitted); *see Prot. & Advocacy For Pers. With Disabilities, Conn. v. Mental Health & Addiction Servs.*, 448 F.3d 119, 124 (2d. Cir.2006). If a statutory provision is ambiguous, the court must "then turn to canons of statutory construction for assistance in interpreting the statute." *Greathouse v. JHS Sec. Inc.*, 784 F.3d 105, 111 (2d Cir.2015) (citing *Daniel v. Am. Bd. of Emergency Med.*, 428 F.3d 408, 423 (2d Cir.2005)). "These include looking to the purpose of [a statute], and affording some degree of weight to the interpretations of the agencies charged with enforcing it." *Id.* at 113.

Merriam Webster's Collegiate Dictionary defines "describe" as "to represent or give an account of in words." *Describe*, Merriam Webster's Collegiate Dictionary (10th ed. 1997).

Under this definition, the court sees no basis for interpreting the PAIMI and DD Acts as permitting the Justice Center to redact from its disclosure to DRNY the identities of individuals, including witnesses, subjects, and sources involved in allegations of abuse, or mental health provider and individual service recipient information. The court agrees with DRNY that a reasonable reader would understand the statutory text, considered as a whole, to require the disclosure of the entirety of reports that contain "an account of" alleged incidents of abuse or neglect. (Dkt. No. 16 at 9-10); *see Conn. Office of Prot. & Advocacy for Pers. With Disabilities v. Kirk,* 354 F.Supp.2d 196, 201–02 (D.Conn.2005) (concluding that the phrase "that describe incidents of abuse, neglect, and injury" in the PAIMI Act "simply distinguishes between reports pertaining to the incident in question and reports that do not pertain to the incident"), *aff'd sub nom. Prot. & Advocacy For Pers. With Disabilities, Conn.,* 448 F.3d 119.[7] The statutes make clear that P & A systems such as DRNY are entitled to all records of subject individuals, and give no indication that investigative agencies should redact or withhold portions of their reports. Even if the court were to accept defendants' contention that only the portions of the Justice Center's reports that describe an alleged incident of abuse or neglect must be disclosed, defendants fail to explain why a description of such an alleged incident should not include the identity of any individuals involved in, or witness to, the incident. (Dkt. No. 10, Attach. 1 at 14.)

3  Turning to the disclosure of facility records, while it is clear from the plain language of the statute that DRNY is entitled to receive such records, it is arguably less clear whether an investigatory agency, such as the Justice Center, can be required to produce them when the facility records are not contained in the agency's report itself. Defendants assert that, where the plain language of the statutes is ambiguous, the Justice Center's interpretation of the statutes is entitled to deference. (Dkt. No. 10, Attach. 1 at 2, 12.) This argument is fundamentally flawed. Defendants rely on the rationale of *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). Under, *Chevron,* an agency's interpretation of a statute it is responsible for administering is entitled to deference so long as it is reasonable in light of the two-step analysis set forth by the Supreme Court. *See* 467 U.S. at 842–44, 104 S.Ct. 2778. As DRNY points out, "[t]he Justice Center is not a federal agency, nor is it charged with enforcing the P & A Acts." (Dkt. No. 16 at 7.) Thus, the court agrees with DRNY that *Chevron* is irrelevant. *See MCI Telecomms. Corp. v. N.Y. Tel. Co.,* 134 F.Supp.2d 490, 501 (N.D.N.Y.2001) ("The deference accorded federal agencies under *Chevron* is based upon the federal agency's expertise and familiarity with the subject matter of its mandate and the need for coherent and uniform construction of a federal law nationwide. ... Those considerations are not applicable to a state agency's interpretation of federal law." (internal quotation marks and citations omitted)). Instead, the court must consider whether the Justice Center's interpretation of the statutes is consistent with federal law, an issue that is subject to *de novo* review in federal court. *See Turner v. Perales,* 869 F.2d 140, 141 (2d Cir.1989).

4  *5 As noted above, when statutory language is ambiguous, the court can look to the purpose of the statute as well as the interpretations of the agencies charged with enforcing it. *See Greathouse,* 784 F.3d at 113. Congress enacted the PAIMI after finding that "individuals with mental illness are vulnerable to abuse and serious injury" as well as neglect, and "State systems for monitoring compliance with respect to the rights of individuals with mental illness ... are frequently inadequate." 42 U.S.C. § 10801(a). Accordingly, the purposes of the PAIMI Act relevant to this litigation are "to assist States to establish and operate a [P & A] system for individuals with mental illness which will ... protect and advocate the rights of such individuals to ensure the enforcement of the Constitution and Federal and State statutes; and ... investigate incidents of abuse and neglect of individuals with mental illness." *Id.* § 10801(b). The DD Act was similarly enacted to "protect the legal and human rights of individuals with developmental disabilities," *id.* § 15041, after Congress found that such individuals "are at greater risk than the general population of abuse, neglect, financial and sexual exploitation, and the violation of their legal and human rights," *id.* § 15001(a)(5).

To accomplish these purposes, the PAIMI and DD Acts entitle P & A systems, such as DRNY, with statutory authority to "pursue administrative, legal, and other appropriate remedies to ensure the protection of individuals with mental illness" or developmental disabilities. *Id.* §§ 10805(a)(1)(B); 15043(a)(2)(A)(i). Further, to carry out the statutory objectives, the PAIMI and DD Acts authorize P & A systems broad access to individuals, facilities, and records. *See id.* §§ 10805(a)(3)-(4); 15043(a)(2)(H)-(J); *see also Ctr. For Legal Advocacy v. Hammons,* 323 F.3d 1262, 1270 (10th Cir.2003) ( "[T]he statutory phrase 'all records of ... any individual' is quite broad."); *Ala. Disabilities Advocacy*

*Program v. J.S. Tarwater Developmental Ctr.*, 97 F.3d 492, 497 (11th Cir.1996) (describing the scope of access granted to a P & A system as broad).[8] Clearly, the purpose of the statutes weighs in favor of robust disclosure. Nevertheless, defendants defend their position, in part, on the ground that the information at issue is sensitive and confidential. (Dkt. No. 10, Attach. 1 at 2.) Both the PAIMI and DD Acts, however, impose a duty of confidentiality on P & A systems. *See* 42 U.S.C. § 10806(a); 45 C.F.R. § 1386.28. Thus, the court agrees with DRNY that the Justice Center cannot withhold records based on their confidential nature. (Dkt. No. 16 at 16); *see, e.g., Disability Rights Wis., Inc. v. Wis. Dep't of Pub. Instruction*, 463 F.3d 719, 729–30 (7th Cir.2006) ("The point of the federal P & A statutes is to establish and equip a specialized agency to look out for individuals with mental illness. Confounding the agency in the name of an illusory concern for privacy defeats that very important goal.").

A review of the implementing regulations of the PAIMI and DD Acts further clarifies a P & A system's right of access under the statutes. Under the PAIMI Act's implementing regulations,

> [i]nformation and individual records, whether written or in another medium, draft or final, including handwritten notes, electronic files, photographs or video or audio tape records, which shall be available to the P & A system ... shall include, but not be limited to ... [r]eports prepared by an agency charged with investigating abuse[,] neglect, or injury occurring at a facility rendering care or treatment ... that describe any or all of the following:
>
> (i) Abuse, neglect, or injury occurring at the facility;
>
> (ii) The steps taken to investigate the incidents;
>
> (iii) Reports and records, including personnel records, prepared[,] or maintained by the facility, in connection with such reports of incidents; or
>
> (iv) Supporting information that was relied upon in creating a report, including all information and records used or reviewed in preparing reports of abuse, neglect[,] or injury such as records which describe persons who were interviewed, physical and documentary evidence that was reviewed, and the related investigative findings.

*\*6* 42 C.F.R. § 51.41(c)(2). The regulations implementing the DD Act contain almost identical language. *See* 45 C.F.R. § 1386.25(b)(2). The breadth of records which the regulations require disclosure of, as well as the fact that they contain an inclusive and not exhaustive list of records that must be disclosed, supports DRNY's contention that it is entitled to all relevant records in possession of the Justice Center. (Dkt. No. 16 at 14-17.) Although the regulations specify that P & A systems are entitled to merely an investigatory agency's reports describing underlying records, the United States Department of Health and Human Services (DHHS) has explained that 42 C.F.R. § 51.41(c)(2) provides P & A systems access to "supporting information relied upon in creating a record, including all information and records *used or reviewed* in preparing reports of abuse, neglect, [or] injury." 62 Fed. Reg. 53,548, 53,560 (Oct. 15, 1997) (emphasis added). That DHHS interprets the PAIMI Act as authorizing P & A systems access to such underlying records further supports DRNY's claims.

Defendants somewhat confusingly argue that DRNY is not entitled to draft documents, handwritten notes, electronic files, photographs, or video or audio tape records from investigatory agencies such as the Justice Center, because the reports that such agencies must disclose are not "information" or "individual records." (Dkt. No. 10, Attach. 1 at 17-19.) According to defendants, only facilities that render treatment are required to disclose "individual records" under the regulations. (*Id.* at 18.) Such an interpretation is contrary to the express language of the regulations, which includes the reports of investigatory agencies in the list of "individual records" which are subject to disclosure. *See* 42 C.F.R. § 51.41(c)(2); 45 C.F.R. § 1386.25(b)(2). Thus, the regulations, on their face, require the disclosure of draft reports from investigatory agencies.

Finally, defendants argue that DRNY's claim that the Justice Center has interfered with its federal mandates is baseless. (Dkt. No. 10, Attach. 1 at 19-20.) According to defendants, DRNY does not have a statutory mandate to determine whether investigations conducted by state agencies charged with investigating allegations of abuse and neglect were fully and independently conducted. (*Id.*) The fact that such language is not contained in the PAIMI or DD Acts is of no moment. By redacting and withholding portions of its reports, the Justice Center has interfered with DRNY's mandate to protect and advocate on behalf

of individuals with mental illness and developmental disabilities, and particularly its mandate to investigate incidents of abuse and neglect. Defendants contend that the Justice Center has not interfered with such mandates because DRNY can access the information it seeks from facilities that provide treatment to individuals with disabilities. (*Id.* at 21.) However, as DRNY points out, by withholding portions of its report, including underlying facility records and treatment information, the Justice Center potentially precludes DRNY from accessing such information at all. (Dkt. No. 16 at 21 ("Facility [r]ecords held by the Justice Center may have been lost, destroyed, or altered by the facility that created them.").) Further, defendants' contention that access to the entirety of information included in the reports of investigatory agencies is not essential to a P & A system's statutory mandates is contrary to the explicit language of the statutes granting P & A systems access to such reports. *See Am. Civil Liberties Union v. Clapper*, 804 F.3d 617, 623 (2d Cir.2015) ("[The court] must ... strive to avoid interpretations of a statute that would render any phrase or provision superfluous." (citing *TRW Inc. v. Andrews*, 534 U.S. 19, 31, 122 S.Ct. 441, 151 L.Ed.2d 339 (2001))); *see also Dunn v. Dunn*, No. 2:14cv601–MHT, ——F.Supp.3d ——, ——, 2016 WL 324990, at *12 (M.D.Ala. Jan. 27, 2016) ("Congress, by authorizing unfettered access to 'all records,'... manifested its view that access to such records is critical to the efficacy of efforts to protect and advocate for the mentally ill.").

## B. Federal Preemption

**\*7** Defendants also seek to dismiss DRNY's claims that New York's Executive Law, Public Officers Law, and Social Services Law, as interpreted and applied by defendants, are preempted by the PAIMI and DD Acts. (Dkt. No. 10, Attach. 1 at 21-22); *see* N.Y. Exec. Law § 558; N.Y. Pub. Off. Law § 96; N.Y. Soc. Serv. Law § 496. According to defendants, these laws are consistent with the PAIMI and DD Acts, as New York Social Services Law § 496 and New York Executive Law § 558 authorize the disclosure of the Justice Center's reports to DRNY. (*Id.*) Further, they assert that New York Public Officers Law § 96 permits disclosure of information where specifically authorized by state or federal statute. (*Id.* at 22.) Under defendants' interpretation of the PAIMI and DD Acts, this prevents the Justice Center from disclosing the identity of reports, subjects, or witnesses, mental health provider records, or individual service recipient information. (*Id.*) The court has determined, however, that such disclosures are authorized by the PAIMI and DD Acts.

    5    It is axiomatic that "state law is naturally preempted to the extent of any conflict with a federal statute, or where, under the circumstances of [a] particular case, [the challenged state law] stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." *Starr Int'l Co. v. Fed. Reserve Bank of N.Y.*, 906 F.Supp.2d 202, 234–35 (S.D.N.Y.2012) (internal quotation marks and citations omitted), *aff'd*, 742 F.3d 37 (2d Cir.2014). While they are clearly not in conflict with the PAIMI or DD Acts on their face, accepting as true DRNY's allegation that the Justice Center informed it that these state statutes authorize the withholding of the Justice Center's complete records, (Compl. ¶ 85), the court denies defendants' motion to dismiss DRNY's claim that such laws, as interpreted and applied by defendants, are preempted by federal law. *See N.Y.S. Comm'n on Cable Television v. F.C.C.*, 669 F.2d 58, 62 (2d Cir.1982) (explaining that, in determining whether a state law conflicts with a federal law, courts must "consider the relationship between state and federal laws as they are interpreted and applied, not merely as they are written"' (quoting *Jones v. Rath Packing Co.*, 430 U.S. 519, 526, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977))).

## V. Conclusion

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that defendants file an appropriate responsive pleading within the time allotted by the rules; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

**All Citations**

--- F.Supp.3d ----, 2016 WL 1090579

**Footnotes**

1		*See* 42 U.S.C. §§ 10801-10851.

2		*See* 42 U.S.C. § 15001-15115.

3		In its response to defendants' motion to dismiss, DRNY requests that the
		court enter summary judgment in its favor, because there is no genuine
		dispute as to any material fact in this case. (Dkt. No. 16 at 7 n.2.) However,
		DRNY has not filed a motion for summary judgment. Moreover, defendants
		have yet to file an answer in this case and, thus, have yet to admit or deny
		the facts alleged in the complaint. Accordingly, the court will not consider
		summary judgment on its own. *See* Fed. R. Civ. Pro. 56(f)(3) ("After giving
		notice and a reasonable time to respond, the court may ... consider
		summary judgment on its own after identifying for the parties material facts
		that may not be genuinely in dispute.").

4		The facts are drawn from DRNY's complaint and presented in the light most
		favorable to it.

5		As relevant here, DRNY has the authority to access all records of an
		individual with developmental disabilities or mental illness who: (1)
		authorizes DRNY to access their records; or (2) by reason of their mental or
		physical condition is unable to authorize the release of records, does not
		have a guardian or representative, or the representative refuses to act after
		being offered assistance from DRNY, and DRNY has received a complaint
		regarding the individual's treatment or has probable cause to believe the
		individual has been subjected to mistreatment. (Compl. ¶ 13); *see* 42 U.S.C.
		§§ 10805(a)(4)(A)-(B),15043(a)(2)(I)(i)-(iii).

6		The parties appear to agree that the four individuals whose records DRNY
		seek, F.S., L.B., A.T. and R.T., are each within a category of individuals
		whose records are subject to disclosure. (Dkt. No. 10, Attach. 1 at 4-5 n.3.)

7		Defendants argue that *Kirk* is inapplicable here, because that case involved
		the disclosure of peer review reports by facilities that render care and
		treatment to individuals with mental illness. (Dkt. No. 17 at 3-4.) However,
		the decision in *Kirk* included an analysis of the exact statutory language at
		issue here, and the reasoning applied is equally persuasive where the
		disclosure is made by an agency investigating allegations of abuse. *See* 354
		F.Supp.2d at 199–200, 201–02.

8		The discussion in *Tarwater* pertains to the 1975 Developmental Disabled
		Assistance and Bill of Rights Act, Pub. L. No. 94–103, 89 Stat. 486 (1975),
		which was repealed and replaced with the DD Act in 2000. *See* 97 F.3d at
		497; The DD Act, Pub. L. No. 106–402, § 401, 114 Stat. 1677 (2000).

**End of Document**			© 2016 Thomson Reuters. No claim to original U.S. Government Works.

Westlaw. © 2016 Thomson Reuters		Privacy Statement	Accessibility	Supplier Terms	Contact Us	1-800-REF-ATTY (1-800-733-2889)	Improve Westlaw	THOMSON REUTERS